111 So.2d 677 (1959)
FLORIDA TELEPHONE CORPORATION, a Florida corporation, M.E. Wettstein and C.C. Leiby, Appellants,
v.
STATE of Florida ex rel. PENINSULAR TELEPHONE COMPANY, a Florida corporation, now General Telephone Company of Florida, Appellee.
No. A-483.
District Court of Appeal of Florida. First District.
April 28, 1959.
Rehearing Denied May 25, 1959.
*678 Gurney, McDonald & Handley, Orlando, and Fowler, White, Gillen, Yancey & Humkey, Miami, for appellants.
Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee.
STURGIS, Chief Judge.
This is an appeal from a judgment in a mandamus proceeding directing issuance of a peremptory writ of mandamus in favor of General Telephone Company of Florida, the appellee, hereinafter referred to as the relator, who was shown to be owner of more than one per cent of the outstanding capital stock of Florida Telephone Corporation, the appellant, hereinafter referred to as the respondent, commanding the respondent to allow the relator access to and right of examination of the stock records of the respondent for the purpose of making a list showing the names, addresses and respective stockholdings of respondent's stockholders.
The verified petition for the writ recited facts which, if true, entitled the relator, under the authority of Section 608.39, Florida Statutes, F.S.A., to inspect and make extracts from the stock books or stock lists of the respondent. Negating those provisions of the statute which would bar inspection, it was alleged affirmatively that said information was sought for the protection of relator's interest in the respondent corporation, that it would be used for no other purpose, and that the relator had not within two years or at any other time sold or offered for sale any list of the stockholders, and had not aided or abetted any person in procuring any stock list for such purpose. It alleged a demand on and the refusal of respondent to allow such inspection.
The pertinent part of Section 608.39 provides:
"(1) * * * The stock book or stock lists shall be open for at least three business hours each business day for inspection by any judgment creditor of the corporation or any person who shall have been for at least six months immediately preceding his demand a record holder of not less than one per cent of the outstanding shares of such corporation, or by any officer, director, *679 or any committee or person holding or authorized in writing by the holders of at least five per cent of all its outstanding shares. Persons so entitled to inspect stock books or stock lists may make extracts therefrom.
"(2) If any officer or agent of any such corporation shall willfully neglect or refuse to make any proper entry in the stock book, or shall neglect or refuse to exhibit any stock book, or to allow it to be inspected and extracts taken therefrom as provided in this section, he and the corporation shall each forfeit and pay to the party injured a penalty of fifty dollars for every such neglect or refusal, and all damages resulting to him therefrom.
"(3) It shall be a defense to any action under this section that the person suing has used or purposes to use the information so obtained otherwise than to protect his interest in the corporation or has within two years sold or offered for sale any list of stockholders of such corporation or any other corporation, or has aided or abetted any person in procuring any stock list for any such purpose."
An alternative writ of mandamus issued, to which the respondent filed a return. Respondent's return sought, inter alia, to defend on the ground that the subject was res judicata by virtue of the final denial of an injunction that was sought by the relator against the respondent in a separate action and in another forum. The allegations of the return setting up this defense were stricken on motion of the relator. The primary issue made by the petition and return in allowable form was whether relator desired the information requested for the purpose of protecting its interest in the respondent corporation. Evidence was presented before the trial judge and upon final hearing the judgment in question was entered and peremptory writ issued.
Respondent seeks reversal on five grounds: First, that Section 608.39 is unconstitutional; second, that the subject is res judicata; third, that the trial court improperly interpreted that section; fourth, that the evidence precluded issuance of the writ; fifth, that certain evidence was improperly excluded.
Respondent insists that it was and remains relator's object to use the information in order to purchase stock in Florida Telephone Corporation and thereby obtain control of it, and that relator intends to circularize the stockholders and otherwise consult with them in such manner as to cause them to become dissatisfied with the present corporate management, and by that means to dissuade them from purchasing further securities and stock of the respondent corporation in the event the same should be offered for sale. Respondent excepts to the fact that the relator did not state its specific purpose for securing the information and simply alleged that its purpose was to protect its interest as owner of more than one per cent of the outstanding stock. Such argument may have merit in the aspect of what may be best for the protection of the management in their individual capacities, but the statute must be interpreted as having been designed for the protection and benefit of the stockholders holding the requisite number of shares.
Being creatures of statute, corporations are amenable to all reasonable regulations imposed by statute, both as to their internal operation and as to the rights of those who own them, their stockholders.
The mandatory provisions of the statute in question amplify and expand the common-law inspection rights of the stockholder, but do not withdraw the latter. Such an intention if contemplated must be unequivocally stated. City of Hialeah v. State ex rel. Morris, 136 Fla. 498, 183 So. 745. In Soreno Hotel Co. v. State ex rel. Otis Elevator Co., 107 Fla. 195, 144 So. 339, 340, it is said:
"It is almost uniformly held that statutes, giving the right of inspection *680 to stockholders of the books and records of private corporations, do not abridge the right as it existed at common law, but rather enlarges and extends it by removing some of the common-law limitations." (Citing authorities.)
The corporate books and property are in reality the property of its shareholders, and the basis of the right is ownership and the concomitant necessity for self-preservation. 13 Am.Jur., Corporations, § 433; Fletcher, Vol. V, Corporations, § 2213. At common law any shareholder had the right to examine all the books of a corporation at reasonable times and places and for proper purposes.
The statute in question differs from common-law principles in these respects: A distinction is made between the stock books and other books; it is limited in application to certain stockholders; creditors are given the right of inspection; it prescribes no motive to be asserted as a qualification for exercise of the right; and it provides a penalty of forfeiture to enforce the right. It is significant that by confining the broad statutory right to inspection of stock books and stock records, the legislature left the inspection of other corporate books and records to the more restrictive common-law provisions. Thus the lawmakers seem to have recognized the fundamental right of one owning as much as one per cent of the stock to know those with whom he is associated and the extent of their interests, and of making possible direct communication with them. This is readily seen to be an innocuous right as compared to the potential for abuse that might attend unrestricted examination of books of account, minutes, and other confidential papers. In restricting the right of inspection to shareholders who individually or collectively represent a substantial interest, the Florida statute avoids the pitfalls of earlier statutes of some states which are so framed as to permit professional litigants to buy one share and demand inspection of all the books of the corporation. See Cook, Corporations, Vol. II, § 518.
It is cogently argued by appellee that the penalty provided under subsection (2) of the statute emphasizes legislative recognition of the shareholder's right of inspection, because at common law the penalty was limited to an action for damages. Cook, Corporations, Vol. II, § 512.
Subsection (3) of the statute limits the right of the corporation to refuse inspection and places on the corporation the duty to plead and the burden to establish one or both of two propositions as justification of its refusal: (1) "that the person suing has used or purposes to use the information so obtained otherwise than to protect his interest in the corporation," or (2) "has within two years sold or offered for sale any list of stockholders of such corporation or any other corporation, or has aided or abetted any person in procuring any stock list for any such purpose." As against these limitations, the uses are myriad by which a stockholder may legitimately employ the information in protecting his interest in the corporation. He is not required to specify, as a condition precedent to the right of inspection, which of them he intends to or may employ for the protection of his interest.
Respondent argues that it is unlawful to use such information for the purpose of seeking out the stockholders in an effort to purchase their shares, but this is untenable. It is unreasonable to suppose that the Legislature intended to further restrict such information to the corporate hierarchy or management, to those "in the know" by virtue of their position as corporate employees or officers, rather than to one who by virtue of the quantum of his stock ownership may indeed be the party most vitally interested and affected by improper management. To hold the contrary would effectually emasculate the law.
We agree with the eminent trial judge's observation that in order to deny *681 the writ from the standpoint of equity it would be necessary to assume that in some undisclosed fashion the petitioner intended to mislead the stockholders into selling their shares at less than market. Such assumption is unwarranted. He also observed, and we agree, that there seems to be only four reasons why a stockholder should want such a list: to sell it; to buy stock of others; to air grievances as to the corporate operation; and because of idle curiosity. Only the intent to sell the list, participation in a sale of such list within the two-year period, or the flagrant abuse of the right to criticize the management, can deny him the right, and it is the burden of the corporation to plead and establish such defenses if they exist.
The protection of interest by purchasing additional stock is a perfectly legitimate enterprise. Hanrahan v. Puget Sound Power & Light Company, 1955, 332 Mass. 586, 126 N.E.2d 499; Martin v. Columbia Pictures Co., Sup. 1953, 133 N.Y.S.2d 469; State ex rel. G.M. Gustafson Co. v. Crookston Trust Co., 1946, 222 Minn. 17, 22 N.W.2d 911. The desire to gain control is repugnant only to those seeking its retention or more of the same.
In the Hanrahan case, supra, evidence was produced that the real object of the stockholder in seeking to inspect the stock and transfer books was to accomplish a merger of the corporation with another. On that point the court said:
"With the business merits of such a merger we are not concerned; that is a question for the stockholders to determine. All that we are concerned with is whether this objective is such a purpose as to fall outside the plaintiffs' interest `as a stockholder, relative to the affairs of the corporation.' Plainly a change in the management and policy of the corporation affects the plaintiffs' rights as stockholders and is certainly relative to the affairs of the corporation. Powelson v. Tennessee Eastern Electric Co., 220 Mass. 380, 384, 107 N.E. 997. If, therefore, this were the only purpose of the plaintiffs we should say, without hesitation, that it would not defeat their right of inspection." [332 Mass. 586, 126 N.E.2d 503.]
In Martin v. Columbia Pictures Co., supra, it was insisted by the corporation, as by respondent here, that the right of inspection should be denied because the ultimate object was control of the corporation. In that case, Martin had invested three-quarters of a million dollars in Columbia Pictures Co. (133 N.Y.S.2d at page 476). In this case the relator has invested approximately one million dollars in the Florida Telephone Corporation. In rejecting the inference of bad faith, the New York court stated (at page 476):
"It does not seem credulous, as contended by Columbia, that petitioner would jeopardize so substantial an investment merely for the purpose of harassing its management or interfering with its business operations. It necessarily follows that any course of conduct by petitioner which is detrimental to Columbia must adversely affect his own holdings therein."
The independent suit for an injunction that was instituted by relator against the respondent in Lake County, and that was dismissed by that forum, sought injunctive relief that seems clearly to have been in aid of this mandamus proceeding. Its dismissal did not constitute an adjudication of the issues in the latter proceeding and, by reason of the very nature of the distinction between the two types of action, resulted from entirely different considerations of law. The trial court properly rejected the defense of res judicata as sought to be interposed by the respondent.
We have examined the other points relied on by appellant and find that they are without merit. The trial judge correctly exercised his discretion in *682 holding that relator was entitled to the mandatory writ. Such discretion will not be disturbed on appeal unless error is flagrant and the abuse of discretion egregious. La Gorce Country Club v. Cerami, Fla., 74 So.2d 95; State ex rel. Beacham v. Wynn, 158 Fla. 182, 28 So.2d 253; Bacon v. Klemm & Son, 103 Fla. 588, 137 So. 686.
Affirmed.
CARROLL, DONALD and WIGGINTON, JJ., concur.