PEOPLE ex rel. HUNTER v. NATIONAL PARK BANK OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 6, 1907.

1. MANDAMUS—CORPORATIONS—ACCESS TO CORPORATE BOOKS.

While a stockholder may enforce his right to inspect corporate books by mandamus, yet the writ of mandamus is in the discretion of the court, and it will not be granted when the application is not made in good faith for a legitimate object.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 264.]

107 N.Y.S.—24

**2. SAME.**

It is sufficient in the first instance for a stockholder, seeking mandamus to enforce his right to inspect corporate books, to show a clear legal right; but if in the answer facts are presented from which it may be inferred that the application is not in good faith for the protection of the stockholder or the corporation, but is for some improper purpose, the burden is on the stockholder to show affirmatively that he is acting in good faith for a legitimate purpose.

**3. SAME.**

In mandamus to enforce the right of a stockholder given by Stock Corporation Law, Laws 1890, p. 1070, c. 564, § 29, as amended by Laws 1901, p. 965, c. 354, to inspect and make extracts from the corporate stock book, it appeared that the attorney who represented the applicant had for over a year before the applicant acquired his stock made demands on the corporate officers for a list of stockholders, refusing to state for whom he made the demand, or the object thereof; that the demands were refused, and that the applicant purchased four shares of stock of the corporation; that the applicant was a clerk in the office of a firm of attorneys who shortly thereafter made a demand for inspection of the stock book, refusing to state the purpose for which information was desired; that the applicant was accompanied in making his demand by the attorney who had insisted on obtaining his information for undisclosed clients. *Held* to require the applicant to freely disclose his object in making the application, or mandamus would be denied.

**4. SAME.**

Stock Corporation Law, Laws 1890, p. 1070, c. 564, § 29, as amended by Laws 1901, p. 965, c. 354, requiring every stock corporation to keep a stock book containing the names of its stockholders, etc., and authorizing the stockholders to make extracts therefrom, does not give a stockholder the absolute right to compel by mandamus the officers to permit him to examine the stock book, but the court has discretion, and may refuse mandamus where the application is not made in good faith, but for an ulterior purpose; and where facts justify an inference that the application is not made in good faith, the court should, before granting mandamus, require the applicant to frankly state whether he is acting at the instigation of persons undisclosed, and the purpose for which the application is made.

**5. SAME.**

Where, in mandamus by a stockholder to compel the officers of the corporation to permit him to inspect corporate books, the answer sets forth facts justifying an inference that the application is not made in good faith, the stockholder, to show his good faith, may be required to submit replying affidavits, or the court may appoint a referee to take proof of the facts and report to the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 379.]

Houghton, J., dissenting.

Appeal from Special Term.

Mandamus by the people, on the relation of William R. Hunter, against the National Park Bank of New York, to compel defendant to allow relator to make a list of names of stockholders of the bank. From an order granting a peremptory writ, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, HOUGHTON, and SCOTT, JJ.

Louis F. Doyle, for appellant.
Henry B. Culver, for respondent.

INGRAHAM, J.  The relator in his petition makes this application under the provisions of section 29 of the stock corporation law (chapter 564, p. 1070, of the Laws of 1890 as amended by chapter 354, p. 965, of the Laws of 1901).  That section provides that:

"Every stock corporation shall keep at its office * * * a book to be known as the stock book, containing the names alphabetically arranged of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon.  The stock book of every such corporation shall be open daily during at least three business hours for the inspection of its stockholders and judgment creditors, who may make extracts therefrom"

—and imposes a penalty for a neglect or refusal to comply with these provisions.

The petition upon which this proceeding was instituted alleges that the petitioner is the proprietor, owner, and holder of record of four shares of the capital stock of the National Park Bank, the certificate of ownership being dated the 1st day of February, 1907; that the National Park Bank is a corporation organized under the acts of Congress relating to the establishment of national banks and has its principal place of business in the city and county of New York; that on three occasions before the 6th day of May, 1907, the petitioner demanded an inspection of the stock book of defendant, with which demand the president of the defendant corporation refused to comply. The first demand seems to have been made on the 18th day of February, 1907, and on the 6th day of May, 1907, petitioner made an absolute demand, which was refused; whereupon the petitioner, by notice of motion dated May 10, 1907, applied for a mandamus demanding that the defendant permit the relator to have undisturbed inspection of the stock book of the defendant during at least three business hours daily.

In answer to this application there were submitted affidavits from which it appeared that the attorney for the relator called upon the attorney for the defendant prior to January 1, 1906, stating that he wished to inspect and copy the list of stockholders of the National Park Bank; that he claimed the right to a copy of the list as a stockholder of the bank, and that his object in seeking the information was to purchase stock in the National Park Bank; that subsequently he again called on the attorney for the defendant bank, but then declined to say for what purpose he desired the list, intimating that he was not acting for himself, but declined to say for whom he was acting; that he made subsequent demands upon the attorney for the bank, but always refused to state whom he represented in applying for the information; that the relator did not become a stockholder of the bank until February 1, 1907, more than a year after his attorney's first application for leave to examine and copy the list of stockholders; that the petitioner is a clerk employed by a law firm who is engaged in collecting and adjusting claims against banks and serving papers; that he has acted in various cases as plaintiff on assigned claims brought by different firms of attorneys; and that the same attorney had acted for others, who had obtained a small num—

ber of shares of stock in other national banks, in making similar applications for lists of stockholders of such banks.

In the affidavit of the president of the defendant bank it appeared that in December, 1905, the present attorney for the petitioner called upon him and requested an inspection of the list of stockholders, claiming to be a stockholder or to represent stockholders, declining to state, however, whom he represented or for what purpose he desired the list of stockholders; that the capital stock of the National Park Bank is divided into 30,000 shares, of the par value of $100 each, and is held by about 800 stockholders residing in many different states of the Union and in foreign countries; that upon his knowledge acquired as president of the defendant bank, and the nature of the stockholders of defendant bank, he believes and charges it to be the fact that the relator in this proceeding is not a bona fide stockholder of the bank, and does not desire a list of the stockholders for any proper or legitimate purpose, or for the protection of any proper or legitimate interest of any stockholder in the said bank, but seeks to obtain this list for some ulterior and improper purpose, which may, and probably would, be detrimental to the interests of the stockholders of the National Park Bank, and desires an opportunity to show that this inspection is not sought for a legitimate or proper purpose, but on the contrary, is sought for an improper and unlawful purpose; that he therefore desires that a reference be ordered to inquire into the facts of the relator's good faith and for the purpose of his application and the bona fides of the ownership of the stock, and if such reference is ordered the defendant will pay the expenses thereof. There were no answering affidavits, and these allegations remain undisputed.

There is no express provision of law authorizing a mandamus to enforce the provisions of section 29 of the stock corporation law; but, when a stockholder of a corporation shows a legal right to an inspection of the books of the corporation, he is entitled to enforce that right by mandamus. This rule, however, is subject to the qualification that the granting of a mandamus is always in the judicial discretion of the court and a strict legal right will not be enforced when it appears that the application is not made in good faith for a legitimate and proper object. It is sufficient in the first instance to show the existence of a clear legal right to the relief demanded; but if, in answer to the application, facts are presented to the court from which the inference can fairly be drawn that the application is not made in good faith, for the protection of the applicant or of the corporation, but is made for some ulterior or improper purpose, especially when it appears that a small number of shares of stock of an important financial corporation have been acquired for the express purpose of making an application for a list of the stockholders of the corporation, which are not to be used by the owners of the stock making the application, but for others whose names are not disclosed and for purposes not disclosed, the burden is cast upon the party making the application to affirmatively show that he is acting in good faith, for a legitimate purpose and his own or the corporation's protection. In this case it appears that the attorney who is representing

the plaintiff had, for over a year prior to the time when the relator acquired his stock, made persistent demands upon the president of this corporation for a list of stockholders, refusing to state for whom he made the demand or the object for which he required this information. These demands being refused, there were purchased four shares of stock of the defendant corporation, which were transferred to a clerk of the office of a firm of attorneys, who shortly thereafter made a demand for an inspection of the stock book as a stockholder, persistently refusing to state the purpose for which he desired the information, whether or not he was acting for others, or for whom he was acting. He was accompanied in making this demand by the attorney who had insisted upon obtaining the information for undisclosed clients, and was represented by the same attorney in instituting these proceedings to enforce his rights as a stockholder. These facts, I think, required from the relator a free and frank disclosure of his object in making the application, the use to which he wished to put the information that he required, whether or not he was acting on his own behalf, or on behalf of others whose names were not disclosed, as well as the object in seeking to obtain information to which persons who are not stockholders are not entitled.

There is no question in this case of any misuse of its corporate franchises by the defendant, and there is no fact stated which shows any necessity for the intervention of the stockholders in the management of the bank. The application is based upon the assertion of the relator's right as a stockholder to the inspection of this stock book. The assertion of the right is met by facts tending strongly to show that the application is not made in good faith by the petitioner, but that this small number of shares of stock was acquired by him for the purpose of obtaining information which had been requested some time before he purchased the stock by an attorney refusing to state the names of those he represented or the purpose for which he wished the information; a situation which, unexplained, if it did not justify a denial of the application, at least required the court to refuse it until there had been a full and frank disclosure of the persons, if any, back of this application and the purposes for which the information was desired. The courts have always held that applications of this kind are addressed to the sound discretion of the court, and should not be granted for an ulterior or improper purpose. In the Matter of Steinway, 159 N. Y. 250–263, 53 N. E. 1103, 1107, 45 L. R. A. 461, it was said:

"A stockholder has the right at common law to inspect the books of his corporation at a proper time and place and for a proper purpose, and if this right is refused by the officers in charge a writ of mandamus may issue, in the sound discretion of the court, with suitable safeguards to protect the interests of all concerned. It should not be issued to aid a blackmailer, nor withheld simply because the interest of the stockholder is small; but the court should proceed cautiously and discreetly according to the facts of the particular case. To the extent, however, that an absolute right is conferred by statute, nothing is left to the discretion of the court; but the writ should issue as a matter of course, although even then, doubtless, due precautions may be taken as to time and place, so as to prevent interruption of business or other serious inconvenience."

And in speaking of the provisions of this section 29 of the stock corporation law it is said:

"The statute merely strengthened the common-law rule with reference to one part thereof, and left the remainder unaffected. It dealt with but a single book. As to that it amplified the qualified right previously existing, by making it absolute and extending it to judgment creditors. The stock book has no relation to the business carried on by a corporation, and the change was doubtless made to enable stockholders to promptly learn who are entitled to vote for directors, and judgment creditors to learn who are liable as stockholders for a failure to comply with the provisions of the act."

In People ex rel. Lorge v. Consolidated National Bank, 105 App. Div. 409, 94 N. Y. Supp. 173, this court, while upholding the right of a stockholder to an inspection of the stock book and the making of extracts therefrom, said:

"Doubtless the court has power to withhold an inspection for an illegitimate purpose, and may regulate the time when the inspection shall be made. But where it is sought for a legitimate purpose, and the application is made during business hours, the right to such inspection is mandatory."

While the Court of Appeals in the Steinway Case, supra, speaks of the absolute right of a stockholder to an inspection of this stock book prescribed by section 29 of the stock corporation law, I do not think it was intended to hold that the court had no discretion to refuse a mandamus, where the application was not made in good faith, but for an ulterior purpose, and to aid undisclosed persons in undisclosed schemes against a corporation. Where facts are stated which justify an inference that the application is not made in good faith, for the protection or purposes of the applicant, but for the benefit of undisclosed persons for undisclosed purposes, the court has power, and should, before granting the application, at least require the applicant to frankly state whether or not he is acting at the instigation of others, who are undisclosed, and the purpose for which the application is made. This may be accomplished by requiring the relator to submit replying affidavits or appointing a referee to take proof of the facts and report to the court.

It follows that the order appealed from should be reversed, with $10 costs and disbursements to the prevailing party by the final order, and the case remitted to the Special Term for further action in accordance with the views here expressed.

PATTERSON, P. J., and McLAUGHLIN and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). I agree that the rule should be as stated by Mr. Justice INGRAHAM; but it seems to me the Legislature has made it different, and the remedy is with it rather than the courts. Section 29 of the stock corporation law provides that the stock book of every stock corporation "shall be open daily during at least three business hours for the inspection of its stockholders and judgment creditors." Of course, this privilege is granted to a small stockholder, as well as to a large one. The bald right to inspect is given, and the statute makes no mention of his motive in

exercising that right. He has it because of his ownership of the stock. The statute gives him no right to inspect the general business books of the corporation, and his right to such an inspection comes from the common law, and is discretionary, and good motive toward the corporation must exist. With respect to inspection of the stock book, however, the Legislature has seen fit to give him an absolute right of inspection, and I understand the decisions to be that his motive in exercising that privilege is immaterial. Matter of Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461; People ex rel. Clason v. Nassau Ferry Co., 86 Hun, 128, 33 N. Y. Supp. 244; People ex rel. Gunst v. Goldstein, 37 App. Div. 550, 56 N. Y. Supp. 306; People ex rel. Callanan v. K., etc., R. R. Co., 106 App. Div. 350, 94 N. Y. Supp. 555; People ex rel. Fennelly v. Amalgamated Copper Co., 110 App. Div. 892, 96 N. Y. Supp. 1141, affirmed 184 N. Y. 573, 77 N. E. 1193; Same v. United Copper Co., 110 App. Div. 892, 96 N. Y. Supp. 1141, affirmed 184 N. Y. 578, 77 N. E. 1194.

In the Amalgamated Copper Case, supra, the relator owned 2 shares, of $100 each, out of $155,000,000 and the order directing a mandamus to compel inspection of the stock book was affirmed by this court and the Court of Appeals, in spite of voluminous allegations that the inspection was desired from selfish and improper motives; and the United Copper Case, supra, presented substantially the same facts and was similarly decided. However bad the rule may be, I can hardly see how the decisions and the statute can be ignored. It does not seem to me to be an answer to say that the issuing of a mandamus is discretionary, and hence discretion will be exercised against a stockholder with a bad motive. If he has the right, irrespective of motive, there is no room for the exercise of discretion.

The relator was clearly within his statutory rights, and the court below simply followed the statute, and I think its order should be affirmed.

---

(122 App. Div. 602.)

### In re GRANT.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

EXECUTORS AND ADMINISTRATORS—TEMPORARY ADMINISTRATOR — ACCOUNTING—
　　LIABILITY OF. SURETIES—MATTERS OCCURRING PRIOR TO SURETYSHIP.

　　A surety on the bond of a temporary administrator who replaced a former surety was entitled, in a proceeding to charge the administrator with a devastavit of the estate in regard to a stock exchange seat, to show that, if there was such a devastavit, it took place prior to the time he became a surety, and for that purpose have the account filed by the temporary administrator referred back to the referee to whom it was originally referred, to admit evidence in relation to the Stock Exchange seat controversy.

Appeal from Surrogate's Court.