PAUL B. HANRAHAN & another *vs.* PUGET SOUND POWER & LIGHT COMPANY & others.

Suffolk. December 10, 1954. — May 3, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Corporation,* Stockholder, Officers and agents, Records. *Equity Jurisdiction,* Inspection of corporate records. *Evidence,* Presumptions and burden of proof.

The clerk of a Massachusetts corporation having under its by-laws "all the duties commonly incident to his office" was an officer "having charge of" the stock and transfer books to whom a stockholder might properly make application to inspect such books in order to invoke the remedies provided by G. L. (Ter. Ed.) c. 155, § 22, in case of refusal to exhibit them for inspection, notwithstanding that a transfer agent appointed by the corporation had actual custody of such books. [589–590]

Upon an application by a stockholder of a Massachusetts corporation to a proper officer thereof for inspection of the stock and transfer books, followed by a failure to exhibit the books for inspection and a statement that they would not be exhibited at that time as there was reason to believe that the stockholder's purpose in seeking the inspection was one other than in his interest as a stockholder relative to the affairs of the corporation, there was a "neglect or refusal" entitling him to pursue the remedy of a suit in equity under G. L. (Ter. Ed.) c. 155, § 22, to compel exhibition of the books; the asserted impropriety of the stockholder's purpose in seeking inspection was a matter of defence to such a suit to be set up and proved by the defendants therein. [590–591]

In the circumstances, a finding that the purpose of a stockholder of a Massachusetts corporation in seeking to inspect its stock and transfer books was not such as is made by G. L. (Ter. Ed.) c. 155, § 22, a defence to an action or suit under that statute was not plainly wrong

and must stand in a suit by him under § 22 to compel exhibition of the books, where it appeared that his intended use of the list of stockholders obtained through the inspection was by himself and other members of a certain committee to solicit proxies from stockholders in order to elect a management of the corporation favorable to effecting a merger with another corporation in furtherance of a particular policy; the merits of such merger and policy were immaterial. [591–593]

BILL IN EQUITY, filed in the Superior Court on December 22, 1953.

The defendants appealed from a final decree entered after hearing by *Good, J.*

*Joseph P. Rooney,* (*Franklin T. Hammond, Jr.,* with him,) for the defendants.

*Henry M. Leen,* (*Thomas E. Goode, Walter L. Landergan, Jr., & Francis Currie* of New York, with him,) for the plaintiffs.

SPALDING, J. This suit is brought under G. L. (Ter. Ed.) c. 155, § 22, to compel the exhibition of the stock and transfer books of the defendant Puget Sound Power & Light Company, hereinafter called Puget.

Facts which are not in dispute and from which this litigation arose are these. Puget is a corporation engaged in the business of supplying electric power in the State of Washington. It was organized under the laws of this Commonwealth and it has an office in this Commonwealth at 82 Devonshire Street, Boston. The sole officer of Puget in charge of this office is its clerk, the defendant Jackson. Stone & Webster Service Corporation (hereinafter called Stone & Webster), a New York corporation, is a transfer agent of Puget and has custody of the "master list" of stockholders and of the stock and transfer books of Puget at its office in Boston. Another transfer agent of Puget is located in Seattle, Washington, but that agent does not have a complete list of stockholders. Puget has outstanding 2,177,879 shares of common stock which are held by 12,065 stockholders. The plaintiffs Hanrahan and Murphy, stockholders of Puget, with eighty-one other persons purporting to be stockholders, on December 9, 1953, through

their attorneys, presented to Jackson at 82 Devonshire
Street separate applications to inspect "stock and transfer
books of . . . [Puget], containing a complete list of all
stockholders, their residences and the amount of stock held
by each." These applications on that date were sent by
Jackson to Stone & Webster.[1] Failing to obtain inspection
of the stock and transfer books, the applicants brought this
suit on December 22, 1953, against Puget and Jackson.
Subsequently motions to add Stone & Webster as a party
defendant and to dismiss the bill as to all plaintiffs except
Hanrahan and Murphy, hereinafter referred to as the plain-
tiffs, were allowed.

The judge made findings of material facts and entered a
final decree ordering the defendants to exhibit the stock
and transfer books of Puget for inspection by the plaintiffs
and their attorneys; other provisions designed to effectuate
its purposes were included in the decree. The defendants
appealed. The evidence, which was documentary and oral,
is reported.

The defendants' main contentions are that the plaintiffs
are not entitled to prevail because (1) in making applica-
tion to the clerk of the corporation they did not satisfy the
requirements of G. L. (Ter. Ed.) c. 155, § 22, and (2) the
real purpose of the plaintiffs in seeking a list of stockholders
"was for purposes other than the interest of the . . .
[plaintiffs] as stockholders relative to the affairs of the cor-
poration."

At common law a stockholder's right of inspection was
enforceable by mandamus at the court's discretion on proof
by the stockholder of his good faith and a proper purpose.
*Varney* v. *Baker*, 194 Mass. 239, 241. *Butler* v. *Martin*,
220 Mass. 224, 226. *Albee* v. *Lamson & Hubbard Corp.*
320 Mass. 421, 424. The present suit is based not on
the common law but on G. L. (Ter. Ed.) c. 155, § 22, of
which the portions here pertinent are: "The stock and
transfer books of every corporation, which shall contain a

---

[1] Jackson testified that this was done for the purpose of tabulation and
verification.

complete list of all stockholders, their residences and the amount of stock held by each, shall be kept at an office of the corporation in the commonwealth for the inspection of its stockholders. . . . If any officer or agent of a corporation having charge of such copies, books or records refuses or neglects to exhibit them or to submit them to examination as aforesaid, he or the corporation shall be liable to any stockholder for all actual damages sustained by reason of such refusal or neglect, and the supreme judicial or superior court shall have jurisdiction in equity, upon petition of a stockholder, to order any or all of said copies, books or records to be exhibited to him and to such other stockholders as may become parties to said petition, at such a place and time as may be designated in the order, but in an action for damages or a proceeding in equity under this section for neglect or refusal to exhibit for inspection the stock and transfer books, it shall be a defence that the actual purpose and reason for the inspection sought are to secure a list of stockholders for the purpose of selling said list or copies thereof or of using the same for a purpose other than in the interest of the applicant, as a stockholder, relative to the affairs of the corporation."

We are of opinion that the requirements of § 22 were satisfied here. By implication a stockholder is in no position to invoke the statutory remedies unless he shall have first applied for inspection to the agent or officer having charge of the books or records, for otherwise there could be no "refusal or neglect." The clerk is the officer who usually has charge of the books and records of a corporation. Fletcher, Cyc. Corporations, §§ 2189, 2193. And the by-laws of Puget require the clerk to keep accurate minutes of the meetings of the stockholders and to perform "all the duties commonly incident to his office." The fact that here custody of the stock and transfer books was actually in a transfer agent appointed by Puget did not make that ministerial duty any the less an "incident to . . . [the clerk's] office" within the purview of the by-laws. Hence a demand on Jackson would fulfil the requirements of a demand on

the officer or agent having charge of such books.[1]   To decide otherwise would in every case put on an applicant the onerous task of determining at his peril the person in actual possession of the books.   The difficulties of such a requirement are illustrated by the case at bar.   Puget has two transfer agents, one in Boston and the other in Seattle, Washington, where Puget has its principal place of business. But only the Boston agent, Stone & Webster, keeps a master list of all transfers.   Jackson, the clerk, was a person upon whom a stockholder might reasonably expect to make his application for inspection.   The right of inspection ought not to be defeated merely because Puget saw fit to place the custody of the books in Stone & Webster for transfer purposes.   We are not disposed to place an interpretation on the statute which would permit a corporation to divide the custody and control of the stock and transfer books in such a way as to make it difficult, if not impossible, for a stockholder to obtain the remedy provided by the statute. The purpose of the statute was to provide a stockholder with a simple, practical, and expeditious procedure for obtaining inspection of the stock and transfer books of a corporation.

Down to December 22, 1953, when suit was brought neither Jackson nor Stone & Webster had exhibited the books to the plaintiffs.   On that date Puget's attorneys sent a letter to the plaintiffs' attorneys replying to the applications to inspect.   The letter stated that since the applications did not comply with the requirements of G. L. (Ter. Ed.) c. 155, § 22, and since there was reason to believe that the applications were made for purposes other than the applicants' interest as stockholders relative to the affairs of the corporation, Puget's directors had determined not to exhibit the books at that time.   Included in the letter was a list of fourteen questions directed to each applicant.

The defendants argue that there has been no neglect or refusal to exhibit the books.   We do not agree.   When a

---

[1] We are not called to decide whether a demand on Stone & Webster would also have been sufficient.

stockholder applies for inspection of the stock and transfer books he is prima facie entitled to inspect them. See *Shea v. Parker,* 234 Mass. 592. If the books are not exhibited for inspection, the stockholder is then entitled to invoke the remedies provided by § 22. True, after the decision in *Shea v. Parker* the statute was amended by providing that in an action for damages or in a proceeding in equity "it shall be a defence that the actual purpose and reason for the inspection sought are to secure a list of stockholders for the purpose of selling said list or copies thereof or of using the same for a purpose other than in the interest of the applicant, as a stockholder, relative to the affairs of the corporation." But this is an affirmative defence as to which the defendants have the burden of proof. If they sustain that burden then, of course, the plaintiffs cannot prevail. But that is a question to be decided by the court and not by the defendants. We are of opinion that the plaintiffs did all that they were required to do and that there was such neglect or refusal on the part of the defendants as to entitle the plaintiffs to bring these proceedings.

We now turn to the question whether the defendants have established that the plaintiffs' purpose for seeking an inspection of the books was an improper one under the statute. The judge found that the plaintiffs' reason and purpose for inspection were not within the terms of the statutory defence. Although much of the evidence consisted of depositions and documents, some of it was oral, and we can reverse this finding "only if we are satisfied that, giving to the oral testimony all the weight the judge could justifiably give to it, the . . . [finding is] nevertheless plainly wrong." *Murphy v. Hanlon,* 322 Mass. 683, 685.

There was evidence that the plaintiffs are interested in having Puget merge with The Washington Water Power Company (hereinafter called Washington), a corporation organized under the laws of the State of Washington, which supplies the eastern part of that State with electric power. There is no specific merger plan now in existence, but the plaintiffs would like to elect a management which would

actively seek a merger.  Each plaintiff testified that he intended to use the list of stockholders to communicate with other stockholders.  With the business merits of such a merger we are not concerned; that is a question for the stockholders to determine.  All that we are concerned with is whether this objective is such a purpose as to fall outside the plaintiffs' interest "as a stockholder, relative to the affairs of the corporation."  Plainly a change in the management and policy of the corporation affects the plaintiffs' rights as stockholders and is certainly relative to the affairs of the corporation.  *Powelson* v. *Tennessee Eastern Electric Co.* 220 Mass. 380, 384.  If, therefore, this were the only purpose of the plaintiffs we should say, without hesitation, that it would not defeat their right of inspection.

But each has admitted that it is his intention to turn the list over to a group called the Stockholders Committee for Puget Sound Power & Light Company (hereinafter called the committee) of which each plaintiff is a member.  It becomes important, therefore, to determine if the propriety of the plaintiffs' purposes is affected by the purpose, motives, and membership of the committee.  The testimony of members of the committee shows that their purpose generally is to seek a merger with Washington and to prevent the further development of "public" power by opposing any merger with a publicly owned enterprise.  The relative merits of "public" power as opposed to "private" power are no more to be considered than the merits of a merger.  The fact that the committee also plans to use the list of stockholders to solicit proxies does not render the purposes of the plaintiffs improper.  If a petitioning stockholder must bear all the expense and burden of solicitation to promote a legitimate end and loses the right to inspect if he invokes the aid of a committee which represents other stockholders, the relief afforded by the statute would be of little practical value.

The membership of the committee at the time of the hearing below was sixteen, of which all but four were nonstockholders, and all but the plaintiff Murphy were partners in

firms or officers in corporations engaged in investment bank-
ing or in the purchase and sale of securities. There is no
evidence that they intend to use the list for commercial pur-
poses such as the solicitation of stockholders for the purchase
of other securities. A showing of no more than a possibility
of abuse by the securities dealers or their agents is not suf-
ficient ground for refusing inspection to the plaintiffs. See
*Morris* v. *United Piece Dye Works,* 137 N. J. L. 262; *Bundy*
v. *Robbins & Myers, Inc.* 38 Ohio Ops. 77.

Finally the defendants argue that the committee is "dom-
inated, directed and financed" by Washington. Without
reviewing the history of the committee or enumerating the
activities of some of its members individually and as a
group, we think it sufficient to state that neither separately
nor collectively do they necessarily taint the purpose of the
plaintiffs in seeking a list of the stockholders. The finding
of the judge to the effect that the purpose of the plaintiffs
was not improper under the statute was not plainly wrong
and must stand.

We have dealt with the principal questions argued by the
defendants; those not discussed in this opinion have not
been overlooked. We find nothing in them that requires
discussion. At the arguments before us we were informed
that the plaintiff Murphy has ceased to be a stockholder
of Puget. Accordingly the final decree should be modified
by dismissing the bill as to him and appropriate changes
should be made so that the only plaintiff who will be af-
fected by the decree will be Hanrahan, and as so modified,
the decree is affirmed with costs of this appeal.

*So ordered.*