## Frank DeRosa et al. *v.* The Terry Steam Turbine Company et al.

Superior Court       Hartford County       File No. 138429

Memorandum filed March 19, 1965

*Satter & Fleischmann,* of Hartford, for the plaintiffs.

*Robinson, Robinson & Cole,* of Hartford, for the defendants.

Palmer, J. This is an action in the nature of mandamus to require the defendants to permit the plaintiffs to inspect the stock register and transfer books of the defendant corporation in order to obtain the names and addresses of its stockholders, with the number of shares held by each. The case was submitted to the court on a stipulation of facts, with a number of exhibits annexed thereto.

The facts disclosed by the stipulation and attached exhibits may be summarized as follows: The defendant The Terry Steam Turbine Company, hereafter referred to as the company, is a Connecticut corporation located in Hartford. It is in the business of manufacturing steam turbines and other heavy machinery. It has about 245 employees, many of whom are skilled. It has in excess of 1700 stockholders. At the time of a meeting on June 8, 1964, the total number of issued and outstanding shares was 237,999, of which 203,695 filed proxies. Approximately thirty stockholders were present in person at that meeting. On June 2, 1964, the date of the commencement of this action, the company's stock was quoted over the counter at $30½ bid and $33½ asked. All the registered owners of the stock have the same rights, powers, privileges and obligations. Some shares of stock are held in the names of Hartford stock brokerage firms, which are entitled to all the rights, powers, privileges and obligations of stockholders. Each of the three plaintiffs for at least the past eight years and continuing to the present time has been and is an employee of the company. On or about June 7, 1953, each of them purchased, through a stockbroker, one share of the company's stock, and each has continued to be a registered owner of said share to the date of the stipulation of facts. The purchase price for each of said shares was advanced to the plaintiffs by Local 289, A.F.L.–C.I.O., and the plaintiffs have endorsed each check received as a dividend on said stock to Local 289. Local 289 is the owner of three shares of stock in its own name.

On May 12, 1964, the company sent to each of the plaintiffs notice of a stockholders' meeting to be held on June 8, 1964, together with a form of proxy. On May 6, 1964, the plaintiffs sent identical letters to the defendant Robert Neeld, secretary of the com-

pany, which requested permission to inspect the list of stockholders of the company, pursuant to § 33-333 of the General Statutes. Each letter said: "My purpose for such inspection is to obtain the names and addresses of the shareholders in order to apprise them prior to the annual meeting of shareholders of certain facts relating to labor relations of the company which may result in the stockholders at the annual meeting recommending to management corrective action. I make this request in furtherance of my interest as a shareholder and in the interest of the corporation and not for speculative or trading purposes or for any purpose inimicable to the interest of the corporation or any of its shareholders." The request to inspect the stockholder list was reiterated by letter of plaintiffs' counsel dated May 13, 1964. On May 29, 1964, the plaintiffs' attorney sent to the defendants' attorney a letter stating the situation the plaintiffs wished to bring to the attention of their fellow stockholders, to the effect that the agreement between the company and the union of its employees contains neither a provision for arbitration of grievances nor a no-strike clause. This letter said that the employees have become dissatisfied with the company's handling of grievances and since they have no recourse to arbitration their only recourse is a strike. In January, 1964, the employees walked off the job for half a day, and a strike was averted by a narrow margin. This letter further said the stockholders should be desirous of remedying the situation because of a crippling five-month strike in 1962 which substantially reduced the earnings of the company.

In addition to the claims set forth in said letter of May 29, 1964, the plaintiffs claim, among other matters relating to labor relations, that they intend to bring to the attention of the stockholders the

following: (a) The large turnover of employees; (b) the cumbersome and costly incentive pay plan; and (c) the inefficient methods of production, resulting in poor quality and in delays. Letters proposed to be sent to the stockholders of the company will be mailed at the expense of Local 289. The defendants deny that these conditions exist and further claim that even if they do exist they are not abnormal to this type of industry. The defendants also claim that many of the employees have been with the company many years, that the company has provided unusually stable employment for this type of industry and that there have been no layoffs for lack of work in the past fourteen years.

By letter dated June 1, 1964, the company, through its attorney, notified the attorney for the plaintiffs that their request for permission to inspect the list of stockholders pursuant to § 33-333 of the General Statutes was refused. The letter said: "The Company, on the advice of counsel, is taking the position that the purpose as stated in your letter is not a proper purpose under the statute." This action was instituted on June 2, 1964, and the annual stockholders' meeting was held on June 8, 1964, at which meeting an attorney for the union and proxy for one of the plaintiffs presented a motion which was voted to be out of order.

The company's bylaws provide: "Special meeting of the stockholders may be held at any time upon call of the president or secretary, or upon the written request of holders of at least 10% of the stock of the corporation, the holders of which are entitled to vote at stockholders' meetings."

The defendants claim that during 1964 a total of thirty-eight grievances were submitted, of which eleven were settled at the first stage, fifteen at the second stage, and eight at the third stage. Of the

remaining four, one was disposed of by arbitration as provided by the collective bargaining agreement, and the remaining three, which are not subject to arbitration, are still pending.

On November 19, 1962, the company and Local 289 entered into a contract governing the relations between the company and the union and the company employees for the period November 19, 1962, to April 30, 1966. During the negotiations preceding the execution of the contract, the union asked for the inclusion therein of a provision for the arbitration of grievances, which request was rejected by the company, and the contract was executed without such a provision. The plaintiffs were members of the union negotiating committee which negotiated the contract and are signatories thereto. Two of them are still members of the committee, and one is still the chief union steward.

The plaintiffs claim that over the past year the company's handling of employee grievances has caused dissatisfaction among the employees and a lowering of their morale, which the defendants deny. In January, 1964, the employees, dissatisfied with the company's decision on a particular grievance, engaged in a work stoppage for one-half of a day. From June 12, 1962, to November 19, 1962, the employees of the company were on strike, during which period the company's production decreased substantially, and the earnings of the company were adversely affected.

Section 33-333 (a) of the General Statutes provides that a list of shareholders shall, for a period of five days prior to each meeting of shareholders of which at least seven days' notice is given, be kept on file and "shall be subject to inspection by any shareholder during usual business hours for any proper purpose in the interest of the shareholder

as such or of the corporation and not for speculative or trading purposes or for any purpose inimical to the interest of the corporation or of its shareholders." Subsection (c) of § 33-333 provides: "In any action or proceeding based on alleged violation of subsection (a) it shall be open to the corporation to show that, under all the circumstances, its refusal to permit inspection prior to or on the day of the meeting was proper in accordance with such subsection."

There does not in the stipulated facts appear to be any claim or any basis for a claim that the plaintiffs seek the list of shareholders for speculative or trading purposes. Accordingly, the remaining questions under the statute are whether the inspection request of the plaintiffs was, in the words of the statute, "for any proper purpose in the interest of the shareholder as such or of the corporation and not . . . for any purpose inimical to the interest of the corporation or of its shareholders." The issue in this case is simply whether the plaintiffs' request for inspection of the list of shareholders violates the quoted portions of the statute. The questions posed are: Is the plaintiffs' request one for a proper purpose in the interest of the plaintiffs as shareholders or of the company? Is the plaintiffs' request one for any purpose inimical to the interest of the company or of its shareholders?

The briefs of the parties indicate disagreement as to the effect of the above-quoted provisions of subsection (c) of § 33-333 in respect to the burden of proof. The plaintiffs argue that the statute places the burden of proof on the defendants, and the defendants claim it is on the plaintiffs. It is noted that the defendants' argument appears to rely on provisions of § 33-334 (b) which do specifically place the burden of proof on shareholders seeking an

examination of certain corporate records. However, it is abundantly clear that the present action is predicated solely on § 33-333, and not on § 33-334. As the case was submitted on an agreed statement of facts, it is purely a question of law whether on those facts the plaintiffs are entitled to an inspection of the list of shareholders by virtue of § 33-333 (a). Accordingly, it is not necessary to determine the effect of § 33-333 (c) on the burden of proof. See *Noll* v. *Moran,* 94 Conn. 452, 455. Furthermore, the defendants in their special defense have affirmatively and specially pleaded that the plaintiffs do not seek inspection "for any proper purpose in their interest as shareholders or in the interest of the" company, and that the plaintiffs seek inspection "for a purpose inimical to the interest of the [company] or its shareholders." Whether these claims are true is the principal issue in this case. If it be assumed without deciding that under the statute the burden of proof is on the plaintiffs, the defendants by affirmatively and specially pleading that the plaintiffs are not entitled to inspection under the statute for the express reasons stated in the statute have assumed the burden of proof which they claim should rest on the plaintiffs. See *Squires* v. *Wolcott,* 133 Conn. 449, 452; *Colligan* v. *Reilly,* 129 Conn. 26, 28.

The obvious purpose of the plaintiffs in seeking the names and addresses of the company's shareholders is to communicate with them about the company's relations with its employees, and to inform the shareholders that the employees are dissatisfied with the company's policies toward its employees, particularly in respect to such issues as employee turnover, the pay plan, production methods and grievance procedures. In the view of the court it is immaterial for the purposes of this case, and it need not be determined, whether or not the plain-

tiffs' claims are justified or whether or not the company's management is justified in the positions it has taken in regard to the matters that have been in dispute. What does matter is the fact that the plaintiffs wish to communicate with the shareholders in respect to matters of interest and legitimate concern to the shareholders and to the company. It should hardly be necessary to argue that harmonious labor relations between the company and its employees are for the benefit of the company and of the stockholders. Such relations make for increased production, and increased production leads to higher dividends.

The defendants point to the facts that the plaintiffs are members of the union negotiating committee which negotiated the existing collective bargaining agreement, that two of the plaintiffs are still members of that committee, and that one plaintiff is the union chief steward. Furthermore, the union paid for the plaintiffs' shares and receives all dividends thereon. Also, the union intends to pay the cost of communications to the shareholders. It does not seem to the court that these facts in any way impair the status of the plaintiffs as shareholders, nor do they have any bearing on the fact that the plaintiffs' purpose is to communicate with the other shareholders in respect to the company's labor relations. An idea or suggestion or even an argument does not become tainted or hostile or inimical to the interests of the company or its shareholders merely because it emanates from shareholders who are union members or officials. It is entirely possible that the ideas of such shareholders may be beneficial, and in any event, whether their ideas are right or wrong, they should have the right to expose them to the other shareholders.

The court is unable to find upon the basis of the stipulated facts and the exhibits referred to therein

that the plaintiffs' purpose in seeking to inspect the list of shareholders is not a proper one in the interest of the plaintiffs as shareholders or in the interest of the company. Nor can the court find that the plaintiffs' purpose is inimical to the interest of the corporation or of its shareholders.

In their special defense, the defendants allege that the plaintiffs are acting for their union and by the present action they seek to reopen the collective bargaining agreement by bargaining directly with the company's shareholders on a matter that was discussed and settled contrary to the union demands, "all of which constitutes an unfair labor practice in violation of the National Labor Relations Act." In their brief, the defendants make the following claim: "The purpose for which the [shareholder] list is sought contemplates the commission of unfair labor practices and/or a breach of the existing contract and/or the commission of a tort." It seems to the court that in advancing these claims the defendants mistake the issues under the statute, which are whether the plaintiffs have any proper purpose in their own interest as shareholders or in the interest of the corporation and whether the plaintiffs have any purpose inimical to the interest of the company or of its shareholders. Those issues must be determined upon the agreed facts, independently of whether the plaintiffs' purpose does or does not contemplate the commission of unfair labor practices or a breach of contract or the commission of a tort. The fact that the plaintiffs' purpose may or may not contemplate such objectives is irrelevant to the statutory issues. It may be that a purpose which contemplates the objectives claimed by the defendants might also under some circumstances be an improper purpose under the statute, but that result would follow not because it happens to contemplate the commission of unfair labor prac-

tices or a breach of contract or the commission of a tort, but rather because the court finds that a shareholder's purpose was not compatible with the standards set forth in the statute. In this case the court is unable to so find.

Parenthetically, it might also be pointed out that it appears to be settled law that the determination of what conduct constitutes an unfair labor practice is expressly placed within the competence of the national labor relations board, and state courts are precluded from like action. *Garner* v. *Teamsters Union No. 776*, 346 U.S. 485, 491. The defendants in this case have in their special defense specifically invoked the National Labor Relations Act. 49 Stat. 449, as amended, 29 U.S.C. §§ 151-68 (1964). The United States Supreme Court has said: "When it is clear . . . that the activities which a State purports to regulate . . . constitute an unfair labor practice under § 8 [of the National Labor Relations Act], due regard for the federal enactment requires that state jurisdiction must yield. . . . Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes." *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236, 244. It is clear that state court determination of an unfair labor practice under the federal statute in whatever guise is not permissible.

One further claim advanced by the defendants remains to be considered. The defendants in their special defense allege that the "plaintiffs are not bona fide shareholders of the defendant corporation." In their brief, they point out that while the plaintiffs are registered shareholders, they are also officials of the union and are three of the four signatories of the collective bargaining contract; also,

that the union purchased their shares of stock and receives the dividends thereon; and finally, that the union will pay the cost of communicating with the other shareholders. From these facts it is urged that the plaintiffs "are in fact express agents of the union."

The case of *Trans World Airlines, Inc.* v. *State ex rel. Porterie,* 183 A.2d 174 (Del.), affords an answer to the defendants' claim that a registered shareholder acting for the beneficial owner of shares may not inspect the list of shareholders. See also note, 15 A.L.R.2d 11. The court found that the relator, one Porterie, bought T.W.A. stock in behalf of Hughes, for whom he was acting, and who inspired and was financing the litigation. The court said (183 A.2d at 175): "This fact alone does not defeat Porterie's right of inspection. That right depends on *record ownership.*" (Italics supplied.) T.W.A. also claimed that "the purpose of the inspection is improper and inimical to the corporate interest, and hence inspection should be denied," because T.W.A. was suing Hughes, and Hughes was trying to obtain stockholder support for a corporate policy designed to defeat T.W.A.'s action. The court said (183 A.2d at 176): "The matter is one of corporate concern, and any stockholder is entitled to take which side he prefers and to seek support from fellow stockholders. For this purpose he is entitled to inspection of the stock ledger. It is a purpose germane to his interest as a stockholder. He cannot be denied inspection because the management insists he is on the wrong side." By the same token, relief cannot be denied to the plaintiffs here because the company's management insists they are on the wrong side of the issues in respect to the company's labor relations policies. It is not for the court to make any determination in respect to these issues; rather it is for the company's shareholders.

Judgment may enter that a writ of mandamus issue ordering the defendant Robert Neeld, secretary of defendant The Terry Steam Turbine Company, or any other corporate officer having responsibility for the share transfer books for shares of defendant The Terry Steam Turbine Company, to permit inspection by the plaintiffs, or their authorized attorneys or agents, of a complete list or other equivalent record of the shareholders of defendant The Terry Steam Turbine Company entitled to vote at any meetings of its shareholders, arranged in alphabetical order, with the address of, and the number and class of shares held by each, and further ordering that the plaintiffs recover of the defendants their costs.