Rockingham
No. 90-043

JOHN M. DAVEY

v.

UNITIL CORPORATION

January 28, 1991

*Merrill & Broderick*, of Manchester (*Martha V. Gordon* on the brief and orally), for the plaintiff.

*Ransmeier & Spellman*, of Concord (*Garry R. Lane* on the brief), and *Davis, Polk & Wardwell*, of New York, New York (*K. Ann McDonald* orally), for the defendant.

JOHNSON, J.  This is an appeal from a Superior Court (*Perkins, J.*) decision denying the plaintiff's petition for injunctive relief. The

plaintiff, John M. Davey, sought an order compelling the defendant, Unitil Corporation (Unitil), to give him the company's shareholder list. The trial court ruled that Davey lacked a "proper purpose," see RSA 293-A:52, for examining the list and therefore denied Davey's request. We reverse.

The material facts of this case are not in dispute. Davey owns 335 shares of stock in Unitil, a New Hampshire public utility corporation. He bought 235 shares in September 1988 at $28.25 per share and then purchased 400 shares at $28.50 per share in December 1988, and he later sold 300 of the shares. He also owns 500 shares of stock in Eastern Utilities Associates (Eastern Utilities), a public utility holding company.

In April 1989, Eastern Utilities made a cash tender offer to Unitil shareholders to buy all outstanding Unitil common stock at $40.00 per share. Davey soon learned of the tender offer after noticing that the price of Unitil stock rose from $33.00 to $37.00 per share in the course of one day. When the price reached $38.00 per share, Davey sold 300 of his original 635 shares in order to "lock in half of the profits." Although Unitil considers Eastern Utilities's tender offer inadequate, Davey approves of the offer and wants it accepted.

In late April, 1989, Davey attended an Eastern Utilities shareholder meeting and met with Don Pardus, chief executive officer of Eastern Utilities and Davey's longtime friend. Davey told Pardus that he was a Unitil shareholder and expressed his enthusiasm for the Eastern Utilities tender offer. Pardus then asked Davey to obtain for him a Unitil shareholder list to allow Eastern Utilities to contact other Unitil shareholders and encourage them to tender their shares. Pardus explained that Eastern Utilities could not on its own compel Unitil to give it the shareholder list, because at that time it was prohibited by the Public Utility Holding Company Act of 1935, 15 U.S.C. 79(i), from owning Unitil shares. Davey testified at a deposition that he agreed to Pardus's suggestion in order to "encourage [Pardus] in his efforts to get the people of Unitil to tender their shares so we can all get the $40.00 per share." Pardus, in turn, promised to reimburse Davey for any expenses incurred obtaining the list.

Davey made a written demand for Unitil's shareholder list in May, 1989. The demand letter, drafted by Eastern Utilities, states in part:

"I am personally interested in tendering my shares of Unitil common stock to EUA [Eastern Utilities], pursuant to its present tender offer. Not only does the EUA tender offer provide me with a premium for my stock, but it also pro-

vides a liquid market for the sale of my stock. Therefore, I am cooperating with EUA in order to encourage other [Unitil] shareholders not only to tender their shares, but to take appropriate action to insure that EUA's tender offer is consummated.

. . . .

The purpose of this request is to permit me to communicate with other stockholders with respect to matters of mutual interest, including EUA's tender offer for all Unitil shares . . . ."

Unitil refused to give Davey its shareholder list, and Davey thereafter filed a petition for injunctive relief in June 1989, seeking an order compelling Unitil to allow Davey to inspect the list. The Superior Court (*Contas*, J.) denied Davey's request for a preliminary injunction on July 21, 1989; the same day, Unitil moved for summary judgment in the action. Following a hearing on the summary judgment motion, the Superior Court (*Perkins*, J.) ruled in Unitil's favor, stating that Davey was not entitled to the shareholder list pursuant to RSA 293-A:52, because "seeking a shareholder list in order to turn it over to another corporation proposing a tender offer is not a proper purpose." In making this ruling, the court found that Davey would not be directly involved in the proposed communication with other shareholders: "[Davey] intends to turn the list over directly to Pardus. He does not intend to communicate with Unitil shareholders, himself. Moreover, there is no understanding that Davey will have any input into the EUA solicitation." This appeal followed.

Davey argues on appeal that the superior court improperly focused on Eastern Utilities's assistance rather than Davey's interest as a shareholder. By confusing his "proper purpose" with the means he wishes to use to achieve that purpose, Davey argues, the trial court in effect imposed a requirement that a shareholder seeking a shareholder list communicate *directly* with other shareholders. Unitil, on the other hand, argues that (1) Davey's interest in communicating with other shareholders is a sham; (2) Davey is simply a "straw man" for Eastern Utilities; and (3) Eastern Utilities is the real party in interest, trying to accomplish through Davey what it cannot do on its own.

This is the first occasion we have had to interpret RSA 293-A:52. Paragraph II of that statute reads:

"Any person who shall have been a holder of record of shares or of voting trust certificates for a corporation at least 6

months immediately preceding his demand or shall be the holder of record of, or the holder of record of voting trust certificates for, at least 5 percent of all the outstanding shares of the corporation, upon written demand stating the purpose of the demand, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, *for any proper purpose* its relevant books and records of accounts, minutes, and record of shareholders and to make extracts from the books and records."

(Emphasis added.) It is undisputed that Davey was a holder of record of Unitil shares for at least six months immediately preceding his demand for Unitil's shareholder list. *See* RSA 293-A:52. Therefore, our inquiry focuses on the words "for any proper purpose."

"Proper purpose" is not defined in RSA chapter 293-A, but the statute's legislative history affords us some interpretive guidance. The bill which eventually became RSA chapter 293-A bore the following introduction: "Based upon the model business corporation act drafted by the American Bar Association, the duties of the corporations and their relationship to the office of the secretary of state are expressly stated and will be essentially uniform with the other states." House bill 721 (1981). We interpret this statement as encouraging us to turn to the decisions of other jurisdictions for guidance as we determine whether Davey had a "proper purpose" in demanding access to Unitil's shareholder list.

A "proper purpose" is generally defined as a purpose that is (1) related to a legitimate interest of a shareholder, and (2) not harmful to the corporation or its shareholders. *See* 6 Z. CAVITCH, BUSINESS ORGANIZATIONS § 116.02[2] (1990); *see also CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982).

"[A] shareholder's purpose in obtaining the list of shareholders can be his own interest, profit or advantage and can be to place before his fellow shareholders a proposition disapproved by the company management which he believes to be in their interest as well as his own. His purpose cannot be to use the list in a capricious, irresponsible or hostile way or in such a manner as to depreciate the assets of the company and the value of the stock of the other shareholders."

*Celina Mut. Ins. Co. v. American Druggists Ins. Co.*, 52 Ohio App. 2d 304, 310, 369 N.E.2d 1066, 1070–71 (Ct. App. 1977).

■ Communication with other shareholders concerning the merits of a pending tender offer is recognized as a "proper purpose" for demanding a corporation's shareholder list and is considered a shareholder's right. *See, e.g., Crane Co. v. Anaconda Co.*, 39 N.Y.2d 14, 17–18, 382 N.Y.S.2d 707, 710, 346 N.E.2d 507, 510 (1976). "The conceptual basis for this right is derived from the shareholder's beneficial ownership of corporate assets and the concomitant right to protect his investment." *Id.* at 18, 382 N.Y.S.2d at 710, 346 N.E.2d at 510; *see also NVF Co. v. Sharon Steel Corp.*, 294 F. Supp. 1091, 1094 (W.D. Pa. 1969) (shareholder's right to communicate with other shareholders concerning matters of common interest deemed "similar to freedom of speech").

Davey's avowed purpose for obtaining Unitil's shareholder list, communication with other shareholders regarding Eastern Utilities's tender offer, easily meets the test stated above. It is related to a legitimate interest of Davey as a shareholder, *i.e.*, increasing his profit on the purchase of Unitil stock, and it does not appear to be harmful to the corporation or its other shareholders. Unitil, however, argues that it is *not* Davey's purpose to communicate with the other shareholders; rather, he merely intends to give the shareholder list to Eastern Utilities. Eastern Utilities, and not Davey, would then perform the direct communication. Davey responds to this argument by insisting that it *is* his purpose to communicate with the other shareholders, and that Eastern Utilities would simply aid him in this communication.

Eastern Utilities is obviously an interested observer of this lawsuit. For its own reasons, it is willing to commit time and resources in order to speak directly with Unitil shareholders about its tender offer. The proper focus of this analysis, however, is not on Eastern Utilities's motives, but on the interests and purposes of Davey, the shareholder seeking access to Unitil's shareholder list. We must ask ourselves whether Davey has an *independent*, proper interest as a shareholder in obtaining Unitil's shareholder list. *See, e.g., DeRosa v. Terry Steam Turbine Co.*, 214 A.2d 684, 688–89 (Conn. Super. Ct. 1965); *Hanrahan v. Puget Sound Power & Light Co.*, 332 Mass. 586, 591–93, 126 N.E.2d 499, 503–04 (1955); *Lopez v. SCM Corp.*, 71 A.D.2d 976, 976–77, 420 N.Y.S.2d 225, 226 (1979). Conversely, the question is whether Davey's interest in obtaining the list is merely a sham conceived by Eastern Utilities. *See, e.g., White v. Jacobsen Manufacturing Co.*, 293 F. Supp. 1358, 1360–61 (E.D. Wis. 1968); *Carpenter v. Texas Air Corp.*, No. 7976 (Del. Ch. April 18, 1985)

(WESTLAW, DE–CS); *Richmond v. Hill*, 148 Ill. App. 179, 181–82 (1909). We hold that Davey has an independent, proper interest as a shareholder.

Unitil points to several facts in support of its argument that Davey's interest in obtaining its shareholder list is a sham: it was Eastern Utilities's idea to obtain the list, not Davey's; Eastern Utilities drafted the demand letter; if Davey obtains the list, he will not contact any of the Unitil shareholders himself; if Davey obtains the list, he will give it to Eastern Utilities; Eastern Utilities will not consult Davey concerning the content of its communication with the other Unitil shareholders; Eastern Utilities is using Davey to accomplish what it cannot do alone; and Eastern Utilities will pay for any costs Davey incurs as a result of his efforts to obtain the list, including the costs of this lawsuit.

While these factors may be relevant in determining whether a shareholder has an independent, proper interest as a shareholder in obtaining a list of shareholders, *see, e.g., Carpenter supra; White supra*, they are by no means dispositive. In *Hanrahan supra*, for example, the plaintiff shareholders planned to give the company's shareholder list to a committee, three-fourths of whom were not stockholders, and allow the committee to communicate the plaintiffs' message to the other shareholders. The court ruled that the plaintiffs' proposed use of the committee did not render improper an otherwise proper purpose.

> "If a petitioning stockholder must bear all the expenses and burden of solicitation to promote a legitimate end and loses the right to inspect if he invokes the aid of a committee which represents other stockholders, the relief afforded by the statute would be of little practical value."

*Hanrahan, supra* at 592, 126 N.E.2d at 504. More importantly, the court rejected the defendant corporation's argument that the plaintiffs' purpose was improper because the committee was "dominated, directed, and financed" by another corporation, Washington Water Power Company. The plaintiff shareholders and their committee hoped to effectuate a merger between the defendant corporation and Washington. *Hanrahan, supra* at 592, 126 N.E.2d at 503–04.

In *DeRosa*, 214 A.2d 684, the plaintiff shareholders were also active members of a union. The shareholders wanted to obtain the defendant corporation's list of shareholders in order to communicate their dissatisfaction with the corporation's labor relations. Like Eastern Utilities, the union appeared to be the guiding force behind

the shareholders' request for the list. The union not only intended to pay the cost of communications with the other shareholders; it paid for the stock the shareholders owned in the corporation and received all dividends thereon. *Id.* at 685. The court found no impropriety.

> "It does not seem to the court that these facts in any way impair the status of the plaintiffs as shareholders, nor do they have any bearing on the fact that the plaintiffs' purpose is to communicate with the other shareholders in respect to the company's labor relations."

*Id.* at 688; *see also Trans World Airlines, Inc. v. State,* 54 Del. 582, 585, 587, 183 A.2d 174, 175–77 (1962) (fact that third party inspired and financed shareholder's demand for list irrelevant because right to inspection depends on record ownership; trial court's attempt to block third party's access to list disapproved).

■ Unitil cites in its brief several cases in which a court used factors such as those listed above as a basis for its decision that a shareholder's purpose was improper. *See A & K R.R. Materials, Inc. v. Green Bay and Western R. Company,* 437 F. Supp. 636, 645 (E.D. Wis. 1977); *White v. Jacobsen Mfg. Co.,* 293 F. Supp. at 1360–61; *Carpenter v. Texas Air Corp.,* No. 7976 (Del. Ch. April 18, 1985) (WEST-LAW, DE–CS); *Richmond v. Hill,* 148 Ill. App. at 181–82; *People ex rel. Hunter v. National Park Bank,* 122 A.D. 635, 639, 107 N.Y.S. 369, 373 (1907). However, in none of these cases was there proof that the shareholder had an independent, proper interest as shareholder in obtaining the list. Thus, the cases are inapposite. The test is whether the shareholder requesting a list has an independent, proper interest in obtaining the list, regardless of the amount or type of assistance any third party may give him or her.

A review of the record persuades us that Davey meets this test. During a deposition, he was asked what he intended to do with the shareholder list if he succeeded in obtaining it. He replied,

> "A. I intend to give it to Don Pardus.
>
> Q. Anything else?
>
> A. No, just to encourage him in his efforts to get the people of Unitil to tender their shares so that we can all get the $40 a share.
>
> . . . .

Q. Did you ask [Pardus] why he wanted it?

A. Yes, I did. He said he wanted to contact the shareholders of Unitil to urge them to tender the shares to Eastern Utilities.

. . . .

Q. So you agreed to demand the stockholder list?

A. Yes, to try to get my 40 bucks."

In another deposition, Pardus testified that Davey agreed to make a demand for Unitil's shareholder list "so that it would enhance his prospect of getting the payment."

■ This testimony amply proves that Davey has an independent, proper interest as a shareholder in obtaining Unitil's list. He reasonably believed that giving the list to Eastern Utilities would increase his own chances of getting forty dollars per share for his Unitil stock. This price was higher than the market price, and Davey considered it to be an impressive return on his investment. Thus Davey has a legitimate interest in doing what he can to make the tender offer succeed; that is, encouraging the other Unitil shareholders to tender their shares. That Davey independently decided to support the tender offer is evidenced by testimony that he broached the subject with Pardus and voiced his approval of the offer *before* Pardus asked him to obtain the shareholder list.

■ Unitil makes much of the fact that Davey does not intend to communicate with the other shareholders directly and will not have any input into or control over Eastern Utilities's communication with the Unitil shareholders. However, we know of no rule requiring, as a prerequisite to obtaining a shareholder list, that a shareholder personally and directly communicate with other shareholders. Such a requirement would place an undue burden on shareholders who have a legitimate message to deliver to other shareholders, but have neither the time nor the resources to deliver it themselves. *See Hanrahan*, 332 Mass. at 592, 126 N.E.2d at 504. "[T]he manner of communication selected should be within the judgment of the shareholder." *Crane Co. v. Anaconda Co.*, 39 N.Y.2d at 17, 382 N.Y.S.2d at 710, 346 N.E.2d at 510.

■ Moreover, Davey's proper purpose is not defeated by his lack of control over the content of Eastern Utilities's communication with the other Unitil shareholders. Davey agreed to give Eastern Utilities the shareholder list because he understood that it would use the list

for the purpose of encouraging Unitil shareholders to tender their shares. Thus, Davey did not give Eastern Utilities a "blank check," and we will assume, absent proof to the contrary, that Eastern Utilities will not use the list for other purposes. *See Hanrahan*, 332 Mass. at 592, 126 N.E.2d at 504.

■■ Finally, Unitil argues that Davey does not have a proper purpose because Eastern Utilities's tender offer is "grossly inadequate," and thus not in the best interests of the company or the shareholders. It is true that a purpose will be deemed improper if a court finds that it is inimical to the interests of the company or its shareholders. *See Crane Co. v. Anaconda Co.*, 59 N.Y.2d at 22, 382 N.Y.S.2d at 712, 346 N.E.2d at 513. However, the trial court failed to find the tender offer harmful to Unitil or its shareholders, and Unitil has presented us with no evidence to support its bald assertion that the offer is "grossly inadequate." Without more, we cannot rule that Davey's purpose in seeking Unitil's shareholder list is inimical to the interests of Unitil or its shareholders. *Cf. Newman v. Smith*, 263 A.D. 85, 87–88, 31 N.Y.S.2d 576, 579 (1941) (offer would give company only 20–25% of market value of net assets; court deemed offer so inadequate that it could not benefit shareholders).

Davey has an independent, proper purpose in obtaining Unitil's shareholder list, and we therefore reverse the trial court's ruling and remand for issuance of an order directing Unitil to make the list available to Davey.

*Reversed.*

All concurred.