**Jeffrey J. KNAEBEL, Appellant,**

v.

**Lawrence E. HEINER, Appellee.**

**Russell W. PRITCHETT, Appellant,**

v.

**SUPERIOR COURT, Appellee.**

**Nos. 5765, 5836.**

Supreme Court of Alaska.

May 28, 1982.

Allen McGrath, Mary L. Poteet, Graham & James, Anchorage, for appellants.

John R. Strachan, Anchorage, for appellees.

OPINION

Before BURKE, C. J., and CONNOR, MATTHEWS and COMPTON, JJ.

MATTHEWS, Justice.

On April 2, 1979, Jeffrey Knaebel, one of three major shareholders of Resource Associates of Alaska, Inc. (RAA), made an agreement with the company and its other two major shareholders to exchange all of his RAA shares for all the shares of a wholly-owned RAA subsidiary. Soon afterwards, Knaebel filed suit to rescind the agreement in the Superior Court at Fairbanks. Trial in the case, which was docketed case No. 79–1104, was scheduled for early March of 1981. Discovery was to close on January 30, 1981.

On October 23, 1980, Knaebel made written demand under AS 10.05.240 [1] for inspection of specified RAA records. The demand stated that Knaebel would be present with his attorney and accountant at the Fairbanks office of RAA on October 30, at 10:00

---

1. AS 10.05.240 provides:
   *Shareholder's right to examine books and records.* A person who has been a shareholder of record for at least six months immediately preceding his demand or who is the holder of record of at least five per cent of all the outstanding shares of a corporation, upon written demand stating the purpose of the demand, may, in person or by agent or attorney, at a reasonable time for a proper purpose, examine and make extracts from its books and records of account, minutes and record of shareholders.

a. m. to begin inspection. On October 28, 1980, Lawrence Heiner, the RAA officer with custody and control of the corporate records, notified Knaebel that his request would be denied because RAA's counsel would be unavailable for an October 30 inspection. On the following day, October 29, Heiner notified Knaebel that his RAA shares were "voided effective October 16, 1980" pursuant to the April 1979 share exchange agreement.

On October 31, 1980, Russell Pritchett, Knaebel's attorney, sent a letter stating the following to John Strachan, Heiner's attorney:

> Please be advised that on November 3, 1980 at approximately 3:00 o'clock p. m. counsel for Jeffrey J. Knaebel will apply to the Superior Court in Fairbanks for an order temporarily restraining Lawrence E. Heiner from denying Mr. Knaebel his rights as a shareholder to inspect the books and records of Resource Associates of Alaska, Inc.

On November 3, Strachan and Russell Winner, Pritchett's associate, flew from Anchorage to Fairbanks.[2] Assuming that any hearing for a temporary restraining order would be before the trial judge in pending case No. 79–1104, Strachan went to the courthouse and inquired of the judge and the clerk of court whether a hearing had been scheduled or any documents filed in that case. At approximately 3:20 p. m., when he had received negative responses to both inquiries, Strachan left the courthouse. Winner arrived at the clerk's office at about 3:10 p. m. He filed a new complaint

against Heiner, seeking both a preliminary and a permanent injunction compelling production of the requested documents and the ten percent penalty for failure to make production prescribed by AS 10.05.243.[3] The complaint was separately docketed as cause No. 80–1867. Winner also filed a motion for a temporary restraining order at that time, along with supporting documents. Later that afternoon, the trial judge denied the motion for a temporary restraining order.

In November of 1980, Heiner moved to dismiss cause No. 80–1867, alleging that Knaebel was splitting a cause of action by bringing the new lawsuit separately from the pending suit for rescission. He also moved for sanctions against Pritchett "for his failure to appear at or properly schedule a hearing before the Superior Court in Fairbanks, Alaska." Over opposition, both motions were granted. The trial court dismissed the complaint as "unnecessary litigation," stating that "everything that's sought to be accomplished [in case No. 80–1867] can be accomplished [in case No. 79–1104]." The order imposing sanctions levied the sum of $1,232.00 against Pritchett.[4]

Knaebel has appealed both rulings, and the appeals have been consolidated.

## I

### The Motion To Dismiss

As previously indicated, Heiner based his motion to dismiss on the ground that Knaebel had split a cause of action by

---

2. Winner and Strachan traveled to Fairbanks on the same flight, but they had never met and would not have recognized each other.

3. AS 10.05.243 provides:
   *Liability for refusal of examination.* An officer or agent who, or a corporation which, refuses to allow a shareholder, or his agent or attorney, to examine and make extracts from its books and records of account, minutes, and record of shareholders, for a proper purpose, is liable to the shareholder in a penalty of 10 per cent of the value of the shares owned by the shareholder, in addition to other damages or remedy given him by law. It is a defense to an action for penalties under this section that the person suing has

within two years sold or offered for sale a list of shareholders of the corporation or any other corporation or has aided or abetted a person in procuring a list of shareholders for this purpose, or has improperly used information secured through a prior examination of the books and records of account, or minutes, or record of shareholders of the corporation or any other corporation, or was not acting in good faith or for a proper purpose in making his demand.

4. The sanctions represent 12 hours of attorney's time plus round trip air fare expenses between Anchorage and Fairbanks.

filing a second suit. A single cause of action cannot be divided and made the subject of separate lawsuits.[5] If a cause of action has been split, the second suit may be abated.[6] We conclude, however, that Knaebel's claim for rescission of the agreement and his claim for inspection under AS 10.-05.240 are not the same cause of action.

The trial court granted the motion to dismiss on the ground that the shareholder inspection sought in cause No. 80–1867 could be achieved by application of the discovery rules in cause No. 79–1104. Though this is true in terms of the eventual production of documents, there is a timing difference between the two options for gaining access to corporate records. Under the discovery provisions of the Alaska Rules of Civil Procedure, a party has thirty days within which to respond to a request for production. Alaska R.Civ.P. 34(b). If production is refused, the requesting party may move for an order to compel under Alaska R.Civ.P. 37(a). *Id.* His opponent then has ten days after service to respond. Alaska R.Civ.P. 77(c). Under AS 10.05.240, production must be made within a "reasonable time," and the period contemplated will in many circumstances be considerably shorter than the time for production prescribed by the civil rules.[7]

The most important difference between the discovery rules and the statutory share-holder inspection right, however, is the penalty for nonproduction available under the latter. Under AS 10.05.243,[8] the penalty for refusing to allow inspection is ten percent of the value of the shares owned by the party making the inspection demand. This can be a very significant sanction. By contrast, the only possible liability incurred for objecting or failing to respond to a discovery request is the reasonable cost incurred by the requesting party in obtaining an order compelling production. Alaska R.Civ.P. 37(a)(4).

The legislature has given shareholders of record inspection rights under the statute. The fact that a shareholder may also have discovery rights when engaged in a lawsuit with a particular corporation does not eliminate his statutory right.[9] We conclude, therefore, that the court erred in dismissing case No. 80–1867.

## II

*The Imposition Of Sanctions*

A court is authorized to assess costs and attorney's fees against an offending attorney or party for infractions of the civil rules.[10] We can perceive no infraction here and therefore the sanctions must be reversed.

Alaska R.Civ.P. 65(b) requires that one seeking a temporary restraining order

---

**5.**  1B Moore's Federal Practice ¶ 0.410[2], at 1163–64 (2d ed. 1980).

**6.**  *Id.* at 1164.

**7.**  *See, e.g., Smith v. Flynn,* 275 Ala. 392, 155 So.2d 497, 501 (1963) (court upheld inspection right when eleven days elapsed between written demand and appearance of party for inspection); *Hanrahan v. Puget Sound Power & Light Co.,* 332 Mass. 586, 126 N.E.2d 499, 503 (1955) (purpose of shareholder examination provisions is "to provide a stockholder with a simple, practical, and *expeditious* procedure for obtaining inspection...") (emphasis added); ABA–ALI Model Bus. Corp. Act § 52, comment to ¶ 2, at 129 (1971) (primary purpose of inspection legislation is to prescribe penalties so that corporations and officers will be less likely to refuse access and "*delay inspection until the right was actually litigated*") (emphasis added).

**8.**  *See* note 3, *supra.*

**9.**  *See Burns v. Drennen,* 220 Ala. 404, 125 So. 667 (1930). *See also In re LTV Securities Litigation,* 89 F.R.D. 595 (D.C.Tex.1981); *State ex rel. Watkins v. Donnell Mfg. Co.,* 129 Mo.App. 206, 107 S.W. 1112 (1908); *Engelhardt v. Hertlein Special Tool Co.,* 157 N.Y.S.2d 529 (N.Y. 1956); *People ex rel. Ludwig v. Ludwig & Co.,* 126 App.Div. 696, 111 N.Y.S. 94 (1908) for cases decided under the common law right of inspection.

**10.**  Alaska R.Civ.P. 95(a) provides:

(a) For any infraction of these rules, the court may withhold or assess costs or attorney's fees as the circumstances of the case and discouragement of like conduct in the future may require; and such costs and attorney's fees may be imposed upon offending attorneys or parties.

give his adversary advance written or oral notice of his application except where specified circumstances exist which make notice impossible.[11] The intent of the rule is to require the best notice possible consistent with the exigencies giving rise to the need for the temporary restraining order. Pritchett's October 31, 1980, notification to Strachan was in compliance with the language and the intent of the rule.

The exact details as to time and courtroom of the hearing were unavailable prior to November 3. On October 31, 1980, Pritchett's secretary had attempted to schedule a hearing but was informed by the clerk of court in Fairbanks that a judge would not be assigned to the case until after it was filed. Without the name of a judge, she was unable to obtain a precise time or courtroom for a hearing and, consequently, could not forward such information to Strachan.

The new complaint and accompanying motion were filed at 3:17 p. m. on November 3, clearly within the time period encompassed by the "approximately 3:00" language in the notification. Strachan's departure from the court at about this time was based on his assumption that Knaebel was going to move in the existing case rather than file a new one. This assump-

tion turned out to be mistaken, but the mistake was not produced by any deceptive conduct on the part of Knaebel's counsel.

REVERSED AND REMANDED for further proceedings.

RABINOWITZ, J., not participating.

11. Alaska R.Civ.P. 65(b) provides:

*Temporary Restraining Order—Notice—Hearing—Duration.* A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good

cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On two days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.