Jeffrey J. KNAEBEL, Appellant,

v.

Lawrence E. HEINER, Appellee.

No. 7438.

Supreme Court of Alaska.

Dec. 16, 1983.

Mary Poteet, McGrath & Associates, Anchorage, for appellant.

John R. Strachan, Strachan, Kelly & Patterson, Anchorage, for appellee.

Before BURKE, C.J., and MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

The issue in this appeal is whether a shareholder was deprived of his statutory right to inspect the records of a corporation,[1] by virtue of a contract requiring him to exchange his shares for stock in another corporation prior to the date of the demand for inspection. The relevant facts are set forth in *Knaebel v. Heiner*, 645 P.2d 201 (Alaska 1982), hereinafter *Knaebel I:*

> On April 2, 1979, Jeffrey Knaebel, one of three major shareholders of Resource

---

1. AS 10.05.240 provides:

A person who has been a shareholder of record for at least six months immediately preceding his demand or who is the holder of record of at least five percent of all the outstanding shares of a corporation, upon writ-

ten demand stating the purpose of the demand, may, in person or by agent or attorney, at a reasonable time for a proper purpose, examine and make extracts from its books and records of account, minutes and record of shareholders.

Associates of Alaska, Inc. (RAA), made an agreement with the company and its other two major shareholders to exchange all of his RAA shares for all the shares of a wholly-owned RAA subsidiary. Soon afterwards, Knaebel filed suit to rescind the agreement in the Superior Court at Fairbanks. Trial in the case, which was docketed case No. 79–1104, was scheduled for early March of 1981. Discovery was to close on January 30, 1981.

On October 23, 1980, Knaebel made written demand under AS 10.05.240 for inspection of specified RAA records. The demand stated that Knaebel would be present with his attorney and accountant at the Fairbanks office of RAA on October 30, at 10:00 a.m. to begin inspection. On October 28, 1980, Lawrence Heiner, the RAA officer with custody and control of the corporate records, notified Knaebel that his request would be denied because RAA's counsel would be unavailable for an October 30 inspection. On the following day, October 29, Heiner notified Knaebel that his RAA shares were "voided effective October 16, 1980" pursuant to the April 1979 share exchange agreement.

. . . .

[Knaebel] filed a new complaint against Heiner, seeking both a preliminary and a permanent injunction compelling production of the requested documents and the ten percent penalty for failure to make production prescribed by AS 10.25.243. The complaint was separately docketed as cause No. 80–1867.

. . . .

In November of 1980, Heiner moved to dismiss cause No. 80–1867, alleging that Knaebel was splitting a cause of action by bringing the new lawsuit separately from the pending suit for rescission. . . . The trial court dismissed the complaint as "unnecessary litigation," stating that "everything that's sought to be accomplished [in case No. 80–1867] can be accomplished [in case No. 79–1104]."

645 P.2d at 202–03 (footnote omitted).

In *Knaebel I,* we reversed the order of dismissal, stating:

The legislature has given shareholders of record inspection rights under [AS 10.-05.240]. The fact that a shareholder may also have discovery rights when engaged in a lawsuit with a particular corporation does not eliminate his statutory right. We conclude, therefore, that the court erred in dismissing case No. 80–1867.

*Id.* at 204 (footnote omitted). While *Knaebel I* was still pending in this court, Heiner prevailed in Knaebel's action for rescission, No. 79–1104. On remand from *Knaebel I,* Heiner moved for summary judgment on the ground that his victory in No. 79–1104 established that Knaebel was not entitled to inspection at the time of his request. The superior court granted summary judgment, and Knaebel filed the present appeal.

In the meantime, we have announced our decision in Knaebel's appeal from the summary judgment entered in the action for rescission. In *Knaebel v. Heiner,* 663 P.2d 551 (Alaska 1983), hereinafter *Knaebel II,* we reversed that judgment and remanded the case.

Heiner's motion for summary judgment and his argument in the present appeal rest entirely on the proposition that if there was a valid contract for the exchange of stock in effect, which called for performance prior to the date of Knaebel's demand for inspection, Knaebel could have no right to inspection after that date.[2]

---

**2.** Knaebel also argues that our opinion in *Knaebel I* established his right to inspect the corporate books as the law of the case. He reasons that if dismissal could have been affirmed on any basis, it would have been; Heiner argued the same position at oral argument in *Knaebel I* that he now asserts, and we would not have remanded the case if we had accepted Heiner's argument.

Our prior opinion speaks for itself, and is authority only for the arguments it addresses, or that are "directly involved" or "necessarily inhering" in the decision. *See Wolff v. Arctic Bowl, Inc.,* 560 P.2d 758, 763 (Alaska 1977). Our discretion to affirm on grounds other than those relied on by the trial court does not mean that alternative arguments have necessarily

Heiner repeatedly asserts that, because of the agreement, Knaebel "had no status as a shareholder" after October 15, 1980. Heiner attempts to distinguish cases supporting the right of a person whose ownership of stock is being litigated to inspect corporate records[3] by saying that since, as of the date of his own motion for summary judgment, the superior court had previously found the agreement valid, Knaebel's status for purposes of the summary judgment motion was conclusively established. According to Heiner, our reversal of the judgment in Knaebel's suit for rescission does not change Knaebel's status; because the lawsuit seeks *rescission,* the contract is valid and binding until rescinded, which has not yet occurred.

■ The shareholder agreement states in part:

RAA will be reorganized in a manner intended to qualify as a Type D reorganization under Section 368(a)(1)(D) of the Internal Revenue Code, and Jeff Knaebel will be the owner of all shares of stock in the split off Type D corporation.

. . . .

RAA and Jeff Knaebel will exchange stock between RAA and the split off corporation, Ventures North Mining Company, Ltd., so that Jeff Knaebel will have no shares in RAA and RAA will have no shares in the split off corporation. . . . The exchange of stock will take place at any time Jeff Knaebel requests it, and in any case the exchange will occur not later than 15 October 1980.

The manner of the "exchange" of stock referred to in the agreement is not specified, but it seems reasonable to assume that some form of physical tender was contemplated,[4] and that unless and until the exchange occurred the agreement, at least on this point, was executory.[5] We, therefore, see no basis for Heiner's position that the agreement by itself effectively cancelled Knaebel's shareholder of record status as of October 15, 1980, any more than a land sale contract which specifies a date for closing cancels a recorded deed on the specified date.

■ Whether the split-off corporation was actually formed and issued stock in Knaebel's name, and whether assets of RAA were transferred to it, and the dates of these events is, given the record before this court, entirely speculative. Moreover, the fact that the split-off corporation was formed and that stock was issued in Knaebel's name would not necessarily affect his status as a shareholder of record in RAA.[6]

Knaebel evidently chose to disregard the split-off agreement insofar as it called for an exchange of stock. He apparently remained a shareholder of record in RAA. RAA could have sought specific performance of the split-off agreement, or it could have acceded to Knaebel's demand for inspection and sued him for damages for breach of contract. Instead, from the present record it appears that RAA attempted, after Knaebel's demand for inspection, to cancel Knaebel's stock, and it does not appear that Knaebel's name was *ever* removed from the corporate record.[7]

been rejected. *See, e.g., Wickwire v. McFadden,* 633 P.2d 278 (Alaska 1981).

3. *See, e.g., Hoover v. Fox Rig and Lumber Co.,* 199 Okl. 672, 189 P.2d 929, 932 (1948); *Engelhardt v. Hertlein Special Tool Co.,* 157 N.Y.S.2d 529 (N.Y.Sup., 1956).

4. AS 45.08.314(b) states in part:
Except as otherwise provided in this section and unless otherwise agreed, a transferor's duty to deliver a security under a contract of purchase is not fulfilled until he places the security in form to be negotiated by the purchaser in the possession of the purchaser or of a person designated by him or at the

purchaser's request causes an acknowledgment to be made to the purchaser that it is held for him.

5. An executory contract is one which has not as yet been fully completed or performed. Black's Law Dictionary at 512 (5th ed. 1979).

6. A shareholder of record is the person who is registered on the corporate books as the owner of stock. AS 10.05.237(a).

7. Had the parties wished to avoid these possibilities, an escrow could have been established to effectuate the transfers.

Given this background, it appears that Knaebel's right to inspect the corporate records pursuant to AS 10.05.240 remained intact both on the date of his demand and on the date set for inspection. Summary judgment in Heiner's favor was, therefore, inappropriate.

REVERSED.