**John T. ULDRICH, Respondent,**

v.

**DATASPORT, INC., Appellant.**

**No. C8–83–1315.**

Court of Appeals of Minnesota.

May 15, 1984.

John L. Tambornino, Minneapolis, for appellant.

Gregory J. Spalj, Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

Datasport, Inc., appeals from an order granting a writ of mandamus to respondent John Uldrich, a shareholder of Datasport, allowing respondent access to Datasport's corporate books and records. Because respondent is a competitor of Datasport, the order included injunctive relief restraining competitive use of the information gained as a result of the writ. Datasport claims that the protection provided by the order is insufficient and asks that the order be modified to require that a third person review the books of account under a protective order not to disclose such information to Uldrich. We affirm.

## ISSUE

Did the trial court abuse its discretion in ordering appellant to allow respondent access to its corporate books and records, with certain protective restrictions prohibiting competitive use of the information by respondent?

## FACTS

Appellant Datasport is a Minnesota corporation incorporated in 1973 under the Minnesota Business Corporation Act. The owners of Datasport and their respective officers and shareholdings are as follows:

| | |
|---|---|
| Dennis Gebhard, President | 1,600 shares |
| Donald Lomax, V.P./Treasurer | 1,600 shares |
| Ralph Dolan | 1,600 shares |
| John T. Uldrich (respondent) | 1,599 shares |
| John Hendricksson, Secretary | 100 shares |
| Synsat Internation (owned by respondent) | 1 share |

Datasport produces a television fish and game forecasting service which identifies periods of increased wildlife activity. The product is marketed to television stations through the use of an outside syndicator, and is also produced in booklet form for sale and for newspaper and radio station features.

Respondent Uldrich is a former employee, officer and director of Datasport. The relationship between respondent and Datasport began in 1974 when he was president of a marketing firm that marketed the Datasport booklet. In 1979 Uldrich purchased 1,600 shares of the capital stock of Datasport, Inc., from two stockholders. He was elected to the board of directors and became an officer of Datasport, Inc. In early 1980 Uldrich became a salaried employee of Datasport.

By June 1980, disagreements developed between respondent and Datasport. He was discharged in early July 1980. His notice of termination recited that it was due to his "lack of performance as marketing director." Dennis Gebhard, Datasport's president, testified that the termination was because respondent would not give "assurances of loyalty to the corporation" relating to the syndication rights to a new product developed by respondent, Gebhard and other Datasport employees.

Respondent testified that the reason for his termination was because he voted against the sale of Datasport stock to Ralph Dolan at the price of $.17 per share. Respondent had paid $12.50 per share for his shares. The vote on the issuance of stock to Dolan was taken on July 1, 1980, and respondent was terminated as an employee the next day.

In July 1980, while respondent was still an officer and director, Datasport sought and was granted an injunction prohibiting him from marketing his competing product for one year. The trial court found that he had breached his duties to Datasport as a director, and possessed confidential information which would allow him to compete unfairly in the sale of his own product.

After Uldrich's termination from Datasport he was denied access to the corporate books and records. He petitioned the trial court for a writ of mandamus commanding Datasport to permit examination of its share register, books of account and record of proceedings of shareholders and di-

rectors of the company. The court denied the petition on the condition that Datasport permit examination of the corporate share register, the record book containing the record of proceedings of shareholders and directors, the annual financial reports, income statements and balance sheets. The order further provided that the petition for writ of mandamus could be renewed if the material surrendered was not sufficient for Uldrich's purposes. Datasport produced these records.

Uldrich, contending that the records produced were insufficient for his purpose, renewed his petition for writ of mandamus seeking the books of account of Datasport. The matter was tried before the district court, which ordered a writ of mandamus directing Datasport to allow examination of:

 a. the general ledger;

 b. the cash and disbursements general journal;

 c. a computer printout of customers, customers' contract terms and contract prices and associated historical data;

 d. the receipts and disbursements journal;

 e. purchase and sales journal;

 f. state and federal income tax returns;

 g. cancelled checks;

 h. bank statements;

 i. deposit tickets;

 j. vendors' sales invoices;

 k. expense vouchers;

 l. entertainment receipts;

 m. vendors' supply vouchers.

In its order, the trial court enjoined Uldrich from making competitive use of such information. Datasport appeals from the order for writ of mandamus.

## DISCUSSION

The right to inspect corporate books and records is guaranteed to shareholders by Minn.Stats. §§ 301.34, subd. 5, and 300.32 (1982), which provide in pertinent parts:

301.34, Subd. 5, *Examinations by Shareholders.* Every shareholder * * * shall have a right to examine, in person or by agent or attorney, at any reasonable time or times, *for any proper purpose,* and at the place or places where usually kept or at such other place as the court may order, *the share register, books of account and records of the proceedings of the shareholders and directors, and to make extracts therefrom.*

300.32. In all stock corporations the directors shall cause accurate and complete records to be kept of all corporate proceedings and of all stock subscribed, transferred, canceled, or retired and proper books, accounts, files, and records of all other business transacted. All such books and records shall, at all reasonable times and for all proper purposes, be open to the inspection of any stockholder. * * *

(Emphasis added).

 To enforce this right, the remedy of mandamus is available to force a corporate defendant to comply. However, mandamus will not be issued to enforce the mere naked right of inspection or to gratify idle curiosity; rather, it is necessary for the petitioner to set out the interest at stake rendering an inspection necessary. *Fownes v. Hubbard Broadcasting, Inc.,* 302 Minn. 471, 473, 225 N.W.2d 534, 536 (1975).

 The trial court found that Uldrich has good faith reasons for seeking access to the corporate books and records of Datasport, i.e. to place a monetary value on his stock interests and to evaluate the conduct and affairs of the other shareholders, officers and directors. In *Fownes* the Supreme Court held such reasons sufficient to compel inspection of corporate books and records by mandamus. *Id.*

Respondent is concerned that the corporate records reflect that virtually all of Datasport's sales revenues are "eaten up" by operating expenses. He is concerned about the other shareholders (who are officers and directors) using Datasport assets to benefit their other business interests.

The other shareholders of Datasport own a partnership called Studio Time; Studio Time leases office space to Datasport. These shareholders also own a corporation called Multi-Data, which promotes a product relating health and weather; Multi-Data offices are also located in the same space as Datasport offices. The officers of Multi-Data are also the officers of Datasport. Datasport sold computer time to Multi-Data and Multi-Data's services were used by Datasport at one time. All of the remaining shareholders, officers and directors of Datasport own a company called Reel Time, a television production company which was operated out of the Datasport offices. In three and one-half years, with over $1.5 million in sales, respondent has received less than $1,000 in return on his investment.

Datasport contends that the documents requested are "confidential business information" and that the order directs Datasport to make available "significant portions of its corporate records which cannot be included within any reasonable definition of books of account under Minn.Stat. § 301.-34, subd. 4 and subd. 5."

Neither the statute nor case law define "books of account." Appellant argues that the trial court's order includes information in these various records that are the supporting documentation for the books of account, "but do not themselves form a part of the books of account."

Under the circumstances here, when the shareholders, officers and directors of Datasport have multiple business interests operated on the same premises as, and doing business with, Datasport, and when respondent's return on his investment appears trivial in view of a substantial sales record, the trial court properly recognized that equity required a broad scope be given to the concept of shareholder access.

·The trial court recognized that misuse might be made of some of the information sought and enjoined use of it for any competitive purpose. Appellant claims that the trial court's protective order is insufficient protection against the dissemination of information concerning the operation of Datasport which "to a competitor would be of inestimable damage to Datasport."

Essentially, appellant is asking this court to assume that there is a bad faith purpose in seeking the information and requests a de novo review of the evidence. At trial Uldrich articulated his good faith reasons. The trial court heard the testimony and the evidence supports the court's conclusion.

The trial court delineated the information which might be a problem and enjoined Uldrich from making use of the information for 30 days after the expiration of the effective period of any contract now existing between respondent and any television station. This was a carefully fashioned protective order by an experienced trial judge and affords appellant sufficient protection.

### DECISION

We hold that the trial court's order is proper in its breadth of scope. The order balances the interests between that of shareholders' access to corporate records and the right of the corporation to be protected against unfair competition.

Affirmed.