1997–NMSC–011

932 P.2d 490

**Maureen SCHEIN, Plaintiff–Appellee,**

v.

**NORTHERN RIO ARRIBA ELECTRIC COOPERATIVE, INC., a New Mexico non-profit corporation, and Emery Maez, Defendants–Appellants.**

No. 23333.

Supreme Court of New Mexico.

Jan. 16, 1997.

Carpenter, Comeau, Maldegen, Nixon & Templeman, Richard N. Carpenter, Michael R. Comeau, Santa Fe, for Defendants–Appellants.

Peter J. Holzem, Chama, Rodey, Dickason, Sloan, Akin & Robb, P.A., William S. Dixon, Charles K. Purcell, Albuquerque, for Plaintiff–Appellee.

## OPINION

BACA, Justice.

1. Pursuant to Rule 12–102 NMRA 1996, Defendant–Appellant Northern Rio Arriba Electric Cooperative ("NORA"), seeks review of a decision from the First Judicial District Court. At trial, the district court decided in favor of Plaintiff–Appellee, Maureen Schein, granting her mandamus action and requiring that NORA allow Schein access to its legal billing records as a member of NORA. We review two issues on appeal: 1) whether the trial court erred in permitting access to the records, and 2) whether the resulting writ exceeded the permissible scope of mandamus. As to the first issue, we affirm the trial court's decision, holding that the trial court did not err in allowing Schein access to the records. However, regarding the second issue, we reverse the trial court's decision, finding that the writ issued by the court exceeded the permissible scope of mandamus.

## I.

2. NORA is a non-profit corporation organized under the Rural Electric Cooperative Act, NMSA 1978, § 62–15–1 (Repl. Pamp.1993). It provides electricity and electric utility service to the public in northern Rio Arriba County and has its principal place of business in Chama, New Mexico. Appellant Emery Maez, is the general manager of NORA.

3. Schein resides within Rio Arriba County, New Mexico, and within the territorial limits of the area served by NORA. Schein is a member in good standing with NORA and purchases her power from NORA. Schein is also employed by the *Rio Grande Sun* newspaper, a news periodical published in Espanola, New Mexico, which reports on and serves northern New Mexico. For several years Schein has attended NORA Board meetings. During this time, she has requested and received business information on NORA such as copies of contracts, annual budgets, financial statements, audit reports, vendor invoices, bank statements, reconciliations, check registers, board minutes, expense account information, and management salary data. Some of this information has been used in stories for the *Rio Grande Sun.*

4. Prior to the current claim, NORA and Schein had disagreed over Schein's access to some of NORA's corporate information. In 1992, Schein brought a mandamus action against NORA seeking access to seven years of financial information which NORA had declined to make available. Schein dismissed the suit when NORA surrendered the documents voluntarily. Subsequently, in 1994, Schein requested copies of NORA's 1994 budget materials. Copies were forthcoming; however, NORA did not include one page of the report in the materials offered. Eventually, Schein obtained the excluded page after her counsel sent a demand letter to NORA's attorney.

5. Also in 1994, Schein sought disclosure of the salary amounts of all NORA employees. NORA refused to reveal the compensation paid to anyone other than the cooperative's management positions. Schein then brought her second mandamus action seeking this payment information and also requesting present and future access to budgetary records. Testimony from the trial indicated that Schein's litigation costs were being covered by the *Rio Grande Sun* and that the information sought might be published in the *Sun* if it were deemed newsworthy. The trial court dismissed the mandamus action, reasoning primarily that the salary information, if disseminated, might infringe on the privacy interests of employees of NORA. Nonetheless, the trial court indicated that materials such as financial records, books, and reports should be accessible to Schein.

6. The conflict which eventually led to the current mandamus claim began on February 20, 1995. In a letter sent to Maez, Schein requested copies of certain bills submitted to NORA by the two law firms that had defended NORA in the two prior mandamus proceedings. NORA provided the requested attorney fee bills to Schein in redacted form. The bills disclosed the total amount of fees charged to NORA, but narrative portions of the bills which detailed the services performed and time spent were omitted. When it became apparent that NORA would not release any more information from the bills, Schein filed the current mandamus action against NORA.

7. At a hearing in October of 1995, the trial court examined the redacted information on the bills in camera. At the conclusion of the hearing, the court announced that it would grant the writ and compel disclosure of the withheld portions of the billing statements. It found that the sections were not protected by privilege. The trial court also adopted the proposed form of the writ which granted Schein access to all NORA books and records in the future upon reasonable request for inspection. Furthermore, the court retained jurisdiction in the event that NORA, in good faith, believes that any item requested in the future should not be disclosed.

8. On appeal, we address two primary issues: 1) whether the trial court erred in permitting Schein access to the specifics of NORA's legal billing statements, and 2) whether the trial court's declaration of continuing jurisdiction over future disputes be-

tween the parties exceeded the permissible scope of mandamus. We uphold the trial court's decision permitting access to the redacted portions of NORA's legal bills. However, we reverse the trial court's decision regarding the issued writ, finding it exceeded the permissible scope of mandamus.

## II.

9. We find that the trial court correctly granted Schein access to the narrative portions of NORA's legal billing statements because Schein had a proper purpose in requesting the information and the narrative portions sought were ·not protected by the attorney-client privilege.

## A.

■ 10. Schein was not motivated by an improper purpose in requesting the data from NORA's legal billing records. This Court supports a policy which grants generous access to corporate information by shareholders/members. *Schwartzman v. Schwartzman Packing Co.,* 99 N.M. 436, 439, 659 P.2d 888, 891 (1983) (holding that shareholders possess the right, at reasonable times and places, to inspect corporation's books and records for proper purposes). Such a policy recognizes the possessory or membership interests held by these individuals in the corporate entity. 5A William M. Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 2213, at 336 (perm. rev.ed. 1995); *see also William Coale Dev. Co. v. Kennedy,* 121 Ohio St. 582, 586, 170 N.E. 434, 435 (1930) (permitting shareholder access to corporate records and recognizing the shareholder's proprietary interest in the corporation). It also affirms the shareholder's/member's right to know how his agents, the corporation's decision-makers, are conducting the affairs of the organization. *Shaw v. Agri–Mark,* 663 A.2d 464, 467 (Del.1995).

■ 11. Consistent with this policy of allowing generous access, the majority common-law rule, and the rule adopted by this Court, places the burden on the corporation to show improper purpose in denying shareholder access to corporate data. Fletcher, *supra,* § 2253.10, at 535; *Kalanges v. Cham-*

*plain Valley Exposition, Inc.,* 160 Vt. 644, 632 A.2d 357, 359 (1993); *Curkendall v. United Fed'n of Correction Officers, Inc.,* 107 A.D.2d 935, 483 N.Y.S.2d 872, 873–74 (1985) (finding that nonprofit corporation resisting attempts by shareholder to inspect books has burden to show bad faith and improper purpose on part of party seeking inspection). Placement of the burden of proof in this manner requires that a corporation demonstrate strong and articulable reasons for denying a shareholder/member access to information regarding his proprietary interests and legitimate concerns. Fletcher, *supra,* § 2213, at 336; *see also Kennedy,* 170 N.E. at 435.

■ 12. In New Mexico, shareholders have the right to inspect, at reasonable times and places, a corporation's books and records for proper purposes. NMSA 1978, § 53–11–50 (Repl.Pamp.1993); *Schwartzman Packing Co.,* 99 N.M. at 439, 659 P.2d at 891. This right generally extends to members of non-stock, nonprofit corporations. *See Fleisher Dev. Corp. v. Home Owners Warranty Corp.,* 856 F.2d 1529, 1530 (D.C.Cir.1988) (finding that where member of non-stock, for-profit mutual corporation had proper purpose for inspection, he should receive access to corporation's books); *Bill Reno, Inc. v. Rocky Mountain Ford Dealers Adver. Ass'n,* 151 Colo. 406, 378 P.2d 206, 207 (1963) (stating that member of nonprofit corporation is entitled to information regarding corporation's business activities and has right to inspect corporate books); *State v. St. Cloud Milk Producers' Ass'n,* 200 Minn. 1, 273 N.W. 603, 605–06 (1937) (upholding corporate records access rights for member of cooperative); *cf. Shaw v. Agri–Mark, Inc.,* 67 F.3d 18, 19 (2d Cir.1995) (per curiam).

■ 13. The determination of what constitutes improper purpose in requesting corporate information is an issue of first impression in New Mexico. Accordingly, we look to other jurisdictions which have made judicial determinations of the propriety of shareholder purpose. Furthermore, we look to jurisdictions where decisions of corporate law policy are consistent with a policy of open access for legitimate shareholder concerns. Shareholder access to corporate in-

formation should be limited to information reasonably related to the legitimate interests of the shareholder. *See, e.g., Davey v. Unitil Corp.,* 133 N.H. 833, 585 A.2d 858 (1991); *Shaw v. Hurst,* 135 Pa.Cmwlth. 635, 582 A.2d 87, 89 (1990); *Advance Concrete Form v. Accuform, Inc.,* 158 Wis.2d 334, 462 N.W.2d 271, 275 (App.1990) (finding shareholder's request for information about corporation's investments reasonably germane to status as shareholder). A proper purpose is not harmful to the corporation or its shareholders. *Davey,* 585 A.2d at 860. A proper purpose can be surmised where the shareholder's purpose in requesting the information bears some reasonable relationship to the interest that the shareholder wants to protect by seeking inspection. *Shaw,* 663 A.2d at 467. Generally, shareholders are entitled to full information as to the management of the corporation and the manner of expenditure of its funds, and to inspection in order to obtain information. Fletcher, *supra,* § 2223, at 393. A proper purpose can include a desire to place a monetary value on stock interests and to evaluate the conduct of officers and directors. *See, e.g., Tatko v. Tatko Bros. Slate Co.,* 173 A.D.2d 917, 569 N.Y.S.2d 783, 784 (1991) (holding that shareholder seeking to sell his stock had proper purpose in requesting access to corporate records); *Uldrich v. Datasport, Inc.,* 349 N.W.2d 286, 288 (Minn.Ct.App.1984) (allowing shareholder access to corporate records based upon shareholder's good faith concern of potential corporate officer misconduct). Suitable subject matter for proper shareholder oversight also extends to efforts by the shareholder to determine the value of his stock and to determine the financial condition of the corporation. *Carter v. Wilson Constr. Co.,* 83 N.C.App. 61, 348 S.E.2d 830, 832 (1986). Reasonable purpose can also include inspection of corporate records to ensure that a nonprofit is managed properly. *Sto–Rox Focus on Renewal Neighborhood Corp. v. King,* 40 Pa.Cmwlth. 640, 398 A.2d 241, 243 (1979). The propriety of such access is premised primarily on the rationale that a stockholder has the right to know corporate information that might affect his losses or gains, affecting the shareholder's ability to protect himself. *State ex rel. Kennedy v. Continental Boiler Works, Inc.,* 807 S.W.2d 164, 166 (Mo.Ct.App. 1991). In addition, such access allows for discovery and deterrence of abuses by corporate directors and officers. *Guthrie v. Harkness,* 199 U.S. 148, 154–55, 26 S.Ct. 4, 5–6, 50 L.Ed. 130 (1905).

14. In beginning the analysis of this case, we reject NORA's contention that Schein needed to possess some basis for suspecting illegal or improper behavior on the part of NORA to warrant the request for information. Such a proposition would thwart efforts of oversight by shareholders, making abuses of corporate power more likely. Moreover, it would deny owners their proprietary right of monitoring and safeguarding their interests.

15. Schein offered a motive for her desire to obtain access to NORA's legal billing statements that was reasonably related to her role as a member of NORA. Schein argued, and the trial court recognized, three primary purposes for seeking access to the narrative portions of NORA's legal bills: 1) to inform herself of the contents of the bills, 2) to inform other members of the cooperative of the contents, and 3) to notify the general public and members of NORA, through the *Rio Grande Sun,* about any information in the billing records which might be newsworthy. Schein asserted that her desire to obtain access to the legal records was premised on her desire to investigate the nature and quality of the legal advice given to the cooperative. In addition, Schein contended that she wanted the legal bills so that she might investigate whether NORA's decision-makers were spending resources on over-priced legal representation, information which might be relevant to NORA's capital accounts.

16. Schein's motivation to investigate NORA's use of resources and the nature and quality of the legal advice given to it was reasonably related to her role as a member. Like any business choice, the selection of legal services and a determination of the value of services received are relevant inquiries to a party concerned about his investment in the entity; as a owner of a proprietary interest in NORA, Schein has a legal right to be informed as to the management of

the cooperative property by the Board in charge of that property. Such information would indicate whether the legal and financial choices being made by NORA were sound; also, such decisions would directly impact the capital accounts of NORA. Shareholders generally are entitled to monitor the activities of their agents. *Meyer v. Board of Managers of Harbor House Condominium Ass'n*, 221 Ill.App.3d 742, 164 Ill. Dec. 460, 464, 583 N.E.2d 14, 18 (1991) (allegation that entity was incurring excessive attorney fees established good faith fear that organization was mismanaging its financial matters, establishing a proper purpose to inspect corporate records); *cf. Belth v. American Risk & Ins. Ass'n*, 141 Wis.2d 65, 413 N.W.2d 654 (App.1987). We find that these grounds are premised upon concerns reasonably related to Schein's role as a member of NORA.

17. As noted previously, in addition to demonstrating a reasonable relationship, the information sought cannot be used for purposes harmful to the corporation or its shareholders. *Davey*, 585 A.2d at 860. We do not believe that Schein's stated intention of sharing newsworthy information from the bills would be harmful to NORA in this instance. The most probative evidence of the absence of potential for harm stems from the district court's review of the redacted bills. The court found that the bills did not contain any improper or harmful information. Furthermore, we believe that the district court is in a better position to weigh fairly the competing needs and interests of parties affected by the disclosure of corporate documents. *Seattle Times v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984). For this reason, we are inclined to defer to the district court's ruling regarding the potential for damage to NORA in this instance.

18. We are not willing to hold, as Schein urges, that a shareholder's secondary motives do not matter where that shareholder has demonstrated some proper purpose in requesting corporate information. Instead, this Court recognizes that even where a shareholder has demonstrated a reasonable relationship to his role as shareholder and the information requested, the acquisition of requested data can still be thwarted where the corporation can demonstrate the harmfulness of allowing access. In the present case, however, NORA has failed to demonstrate either that Schein's request was unreasonable or that the information posed potential harm to NORA if made public.

**B.**

19. Finally, we reject NORA's contention that the redacted information contained in the legal bills is protected by the attorney-client privilege. Under Rule 11–503(A)(4) NMRA 1996:

> a communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

Corporate documents that are subject to the attorney-client privilege may be withheld from shareholders. *Cf. Riser v. Genuine Parts Co.*, 150 Ga.App. 502, 258 S.E.2d 184, 186 (1979) (affirming denial of request for attorney's opinions and sheets of data). However, the privilege does not preclude discovery of the instructions given to the attorney by the client, nor does the privilege bar discovery of the nature and scope of an attorney's authority. *Diversified Dev. & Inv., Inc. v. Heil*, 119 N.M. 290, 296, 889 P.2d 1212, 1218 (1995).

20. Furthermore, we agree with Schein's contention that despite testimony by NORA officials that the billing information was "sensitive" and "intended to be confidential," the information requested falls outside of the attorney-client privilege. Information about the purpose for which an attorney is retained or the steps an attorney took in fulfilling his obligations are not protected. *Colton v. United States*, 306 F.2d 633, 636 (2d Cir.1962) (no privilege where date and general nature of legal services performed by attorney is sought); *In re LTV Sec. Litig.*, 89 F.R.D. 595, 603 (N.D.Tex.1981). Inquiries into the general nature of legal services provided do not violate the attorney-client privilege because they involve no confidential information. *Westhemeco Ltd. v.*

*New Hampshire Ins. Co.,* 82 F.R.D. 702, 707 (S.D.N.Y.1979); *see also Cohen v. Uniroyal, Inc.,* 80 F.R.D. 480, 483 (E.D.Pa.1978) (finding that privilege does not attach where documents reveal only dates that services were rendered, time allotted, and nature of work performed). Appellant contends that under the statute, testimony by NORA officials that the redacted information was considered sensitive warrants granting it privileged status. However, this interpretation goes against the weight of case law which does not protect all types of ministerial information associated with legal communication, such as the information requested here. Furthermore, the trial court examined the redacted information in camera and found no indicia of confidentiality. Finally, if this Court allowed the information here to be shielded by the privilege merely because NORA officials stated that it was sensitive, it would allow organizations to protect any type of data from outside access by making a bald assertion of its intended private nature. We believe that some further showing of the data's confidentiality is necessary. NORA failed to convince the trial court of the sensitive nature of the information, and we are inclined to agree with their assessment. For these reasons, we hold that the requested information was not sought for an improper purpose, nor was it protected by the attorney-client privilege.

### III.

21. The second issue on appeal involves whether the writ issued by the trial court exceeded the permissible scope of mandamus. The writ grants Schein and other NORA members access to NORA documents in the future on a "prompt and reasonable basis" following a reasonable request. NORA contends that mandamus is not an appropriate remedy for compelling performance of a future duty. Additionally, NORA argues that the writ is ambiguously phrased and puts the cooperative at an unreasonable risk of receiving a contempt citation whenever it seeks to withhold production of requested information on the basis of privilege or other confidentiality considerations. We agree. Therefore, we reverse the trial court's decision and limit the scope of the writ of mandamus to the information in the immediate dispute only.

22. Other jurisdictions have conclusively held that mandamus is unsuited to compel the performance of a future duty. *See, e.g., Barnhart v. Bertron,* 356 S.W.2d 390 (Tex.Civ.App.1962); *see also Cleveland v. County of Jack,* 802 S.W.2d 906, 908 (Tex. App.1991) (procedural difficulties in having to appear before court with respect to alleged successive failures to perform does not justify continuing writ of mandamus). Where a duty to perform is not yet due, it cannot be subject to a writ. *Id.* Relevant rights and duties must be established before a writ of mandamus can issue. *Boards of Educ. of Sch. Districts, Etc. v. Cronin,* 54 Ill.App.3d 584, 12 Ill.Dec. 396, 398, 370 N.E.2d 19, 21 (1977).

23. In accordance with these principles, we find that the writ issued by the district court exceeded the permissible scope of mandamus, and therefore, we limit the reach of the writ in this instance to the information requested from NORA's legal billing records. In the writ's present form, NORA's duty to produce information to Schein arises when she makes a "reasonable request." As such, the writ has potential application to documents that are not in existence at this time, and this could involve information about parties that are not even NORA members at the present. Such a situation necessarily would involve rights and duties that have not yet been established. They are not part of the permissible scope of mandamus but were included in this particular writ.

24. Schein cites *State ex rel. Newsome v. Alarid,* 90 N.M. 790, 798–99, 568 P.2d 1236, 1244–45 (1977), for the contention that mandamus under New Mexico law affords a broader remedy than is permitted in other jurisdictions. Appellee uses the case to suggest that mandamus is appropriate for compelling performance of a future duty. Appellee's reliance is incorrect. *Alarid* involved a student newspaper reporter at a university who sought an alternative writ of mandamus permitting him access to the university's nonacademic staff personnel records. *Id.* at 792,

568 P.2d at 1238. The trial court quashed the writ because it was overly broad in the information sought, seeking access to all personnel records with no recognition of statutory exemptions. *Id.* This Court held on review that the trial court should not have denied the petitioner all access to the records but only to confidential files. *Id.* at 799, 568 P.2d at 1245. Thus, the mandamus action was permitted but it was limited in scope. We do not agree with Schein that *Alarid* suggests that mandamus is appropriate for compelling performance of future duties. On the contrary, *Alarid* suggests that mandamus should be narrowly tailored.

25. Schein also urges this Court to allow for prospective access to NORA information for the sake of judicial efficiency and because of NORA's alleged history of denying access to information sought by Schein. However, we do not find arguments of judicial economy or of NORA's alleged intransigence compelling in this instance. Nor do we believe that either of these arguments, without more, should overshadow the significant body of case law limiting mandamus to actions compelling present duties. Therefore, we find that the writ issued exceeded the permissible scope of mandamus, and we limit the writ to the information requested by Schein involving the legal billing records requested in this instance.

## IV.

26. In conclusion, we hold that access to NORA's legal billing statements was properly granted. However, we also find that the district court's writ exceeded the permissible scope of mandamus. We therefore limit the scope of the writ to allow for access by the Appellee to only the information contained in the redacted portions of the legal bills in question.

27. **IT IS SO ORDERED.**

FRANCHINI, C.J., and RANSOM, J., concur.