IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 8, 2008 Session

## CITY OF FRANKLIN, TENNESSEE v. MIDDLE TENNESSEE ELECTRIC MEMBERSHIP CORPORATION

**Appeal from the Chancery Court for Rutherford County**
**No. 05-1243-CV     Royce Taylor, Judge**

---

**No. M2007-1060-COA-R3-CV - Filed July 31, 2009**

---

The City of Franklin, a member of the nonprofit Middle Tennessee Electric Membership Corporation, sued the corporation to obtain access to its records in order to determine whether it would be in the City's interest to acquire those assets which lay within the City boundaries.  The trial court dismissed the suit agreeing with the corporation that the City's request was not in conformance with the statutory requirement of Tenn. Code Ann. § 48-66-102(c) that it be made "in good faith or for a proper purpose."  We reverse the trial court's order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Douglas Berry, Marc R. Jenkins, Nashville, Tennessee, for the appellant, City of Franklin, Tennessee.

James C. Cope, Josh A. McCreary, Murfreesboro, Tennessee, for the appellee, Middle Tennessee Electric Membership Corporation.

### OPINION

### I. A DOCUMENT REQUEST

The Middle Tennessee Electric Membership Corporation (hereinafter "MTEMC" or "the corporation") is a nonprofit corporation which operates under the authority of The Rural Electric and Community Services Cooperative Act, Tenn. Code Ann. § 65-25-201 et seq.  The Act sets out the purposes for which such corporations are organized including the "primary purpose" of "[s]upplying or furnishing at wholesale or retail, electric power and energy services to, and promoting the efficient use and conservation thereof by one (1) or more patrons . . . ."  Tenn. Code Ann. § 65-25-204.

In 1929, the City of Franklin began receiving electrical services through a franchise agreement with Franklin Power & Light Company. MTEMC took over the franchise in 1970, thereby making the City both a patron and a member of the corporation. The franchise was scheduled to expire in 1999. Prior to that date, City officials began to consider changes to the terms of the franchise. To that end, they initiated negotiations with MTEMC, but they were unable to reach agreement. A major point of contention was the City's long-standing effort to place utility lines underground, an expensive proposition that might have required imposing a franchise fee on the corporation's members within the City to help pay for the costs. MTEMC was not particularly interested in the undergrounding of utility lines and was opposed to the idea of a franchise fee.

Starting around 2004, the City began to explore other possible avenues for accomplishing its goals. It retained a consulting firm, Utility Advisors Network, to help it determine whether it would be feasible for it to buy and operate the assets of MTEMC within the City's boundaries. The consultant prepared a preliminary feasibility report, which included a technical, financial and organizational analysis of the utility's assets and concluded that the City and its residents could benefit from acquiring them, but that further information from the corporation would be needed to accurately determine the value of those assets.

On May 17, 2005, Franklin Mayor Tom Miller sent a letter to Frank Jennings, the President of the corporation's Board of Directors, explaining that the city was "evaluating whether to acquire the assets of MTEMC located within the City limits under the Municipal Electric Plant Law of 1935, Tenn. Code Ann. §§ 7-52-101 to 135."[1] The letter went on to ask the corporation to furnish it with copies of an extensive list of documents relating to assets, customer counts, rates, demands, revenues, expenses and losses for MTEMC within the city, so that it could "make a fair and equitable offer to MTEMC for the purchase of its facilities."

Mr. Jennings responded with a letter dated June 2, 2005, which stated that the corporation's Board of Directors had unanimously decided that its "membership and facilities within the city limits of Franklin, in Williamson County, or any other county served by the cooperative are not for sale." The letter went on to state that even if the Board felt differently, the sale or lease of a substantial portion of the corporation's assets would require an affirmative vote of a majority of its more than 160,000 members and, depending on the price, possibly a super-majority. *See* Tenn. Code Ann. § 65-25-213. As for the request for documents, the letter stated that much of the information requested was proprietary and that MTEMC would not make it available to the public without the advice and consent of the membership.

Franklin's City Attorney replied with a letter asserting that whether or not MTEMC's assets were for sale, the City still wanted to evaluate them "in the event there is a resolution to acquire the

---

[1] The cited statutes give municipalities the power to acquire and operate electrical generating plants and transmission lines in order to provide electrical services to consumers and businesses within their corporate limits. This includes the power to acquire property through eminent domain "for all and any purposes necessary in connection with the construction, operation and maintenance of an electric plant or improvements thereto." Tenn. Code Ann. § 7-52-105.

system by eminent domain . . . ." The City further asserted that as a member of MTEMC, it had a right to inspect the documents it had requested under Tenn. Code Ann. § 48-66-102 of the Tennessee Nonprofit Corporation Act. In an answering letter dated July 8, 2005, MTEMC's attorney denied that the City was entitled to the accounting records it requested, but agreed "for purposes of cooperation" to give the City access to such materials as the charter and by-laws of the cooperative, the minutes and resolutions of its Board of Directors, its most recent annual report, and all written communications to members within the past three years.

## II. LEGAL PROCEEDINGS

On August 25, 2005, the City filed a complaint in the Chancery Court of Rutherford County asking the court to order MTEMC to allow it to inspect or copy the requested records at the corporation's expense. It also asked the court to order the corporation to pay all the costs and counsel fees incurred by the City, because of the "the defendant's refusal to allow the inspection of the records not having been made in good faith." *See* Tenn. Code Ann. § 48-66-104(c). MTEMC answered, asserting that the City was not entitled to the records because its request was not made "in good faith or for a proper purpose," as is required by Tenn. Code Ann. § 48-66-102(c) when a member of such a corporation asks to see its accounting records.

The parties continued to negotiate after the complaint and answer were filed, but were still unable to reach agreement. During discovery, the defendant took the deposition of the owner of Utility Advisors Network, Sheree Brown, who had prepared the Feasibility Report. She testified that she had furnished the City with the list of documents that it requested from the corporation.

The hearing of the matter was conducted on March 29, 2007. The only witness to be called to the stand was James R. Johnson, the city administrator. He was asked, among other things, whether the city officials who discussed among themselves the possibility of acquiring the assets of MTEMC had ever given any consideration to whether such an acquisition would be detrimental to MTEMC. Mr. Johnson responded that they did not. Sheree Brown's deposition was entered into the record in its entirety. Substantial portions of the deposition were also read into the record, including Ms. Brown's testimony that she had not evaluated whether or not MTEMC would be likely to benefit from the City's acquisition of its property. In response to a question whether such an acquisition could be detrimental to MTEMC, she had stated that it "could be detrimental, could be positive."

At the conclusion of the City's proof, MTEMC moved the court to dismiss the complaint. The attorney for the corporation argued that the City's request was not made for the benefit of the corporation or for the benefit of the City in its capacity as a member of the corporation, but rather for the benefit of the City alone, in its capacity as a municipality with the power of eminent domain. He further argued that the City's motive was to ultimately compete with the corporation, that such competition was inimical to the corporation's best interests, and thus that the City was requesting the corporation's records for an improper purpose. He cited several cases from other jurisdictions

involving for-profit corporations where the courts have disapproved requests for documents when it found that the requesting shareholder sought the company's records in order to compete with it.

For his part, the City attorney noted that the corporation was performing the functions of a public utility for its 160,000 members in the cities and counties of Tennessee and that if it were a municipality or a privately owned utility, its records would have to be open to public inspection. He further argued that the City had negotiated in good faith with the corporation to modify the franchise agreement, but to no avail. He disputed the relevance of some of the cases cited by the corporation and observed that there were a number of other cases which stand for the proposition that even when a shareholder's purpose is contrary to the avowed intentions of the corporation's management, that did not necessarily make the shareholder's purpose improper. Finally, he asserted that there was no proof that the corporation would not benefit from the sale of its assets, since it could use the proceeds to streamline its operations.

After a recess, the trial court announced its decision from the bench. The court declared that, ". . . what the City is wanting to do is appropriate, and the same can be said for Middle Tennessee Electric. Both of them are looking out for their members or citizens or residents," but since ". . . the City is acting as a City, as a municipality, and not as a member of Middle Tennessee Electric," it could not demonstrate a proper purpose for its request. The court noted that the City had the power to acquire the corporation's property through eminent domain if it wished, but ruled that "under this narrow interpretation of the statute" it was not entitled to the records it sought. The court's determination was memorialized in a judgment filed on April 10, 2007. This appeal followed.

### III. THE QUESTION OF PROPER PURPOSE

Under Tennessee Code Annotated § 48-66-102(a) of the Tennessee Nonprofit Corporation Act, members of nonprofit corporations are entitled to inspect and receive copies of certain types of records of the corporation, so long as the member gives the corporation five days notice in writing and pays a reasonable charge for the labor and materials required for copying such documents. These records include the charter and bylaws of the corporation, certain resolutions by its board of directors, minutes of all board meetings, and the corporation's most recent annual report. These are the exact same records that MTEMC's attorney offered to furnish to the City in his letter of July 8, 2005, "for purposes of cooperation."

Under Tenn. Code Ann. § 48-66-102(c) members also may inspect and receive copies of other types of records of the corporation, including accounting records, but only if

(1) The member's demand is made in good faith and for a proper purpose;
(2) The member describes with reasonable particularity the purpose and the records
    the member desires to inspect; and
(3) The records are directly connected with the purpose for which the demand is
    made.

-4-

MTEMC does not question whether the City adequately described the accounting records it sought or its purpose for seeking them, nor whether those records are directly connected with that announced purpose. Both parties acknowledge that the only question before this court is whether the City's demand was made "for a proper purpose."

## A. PROPER AND IMPROPER PURPOSES

On the question of which purposes are deemed to be proper and which to be improper, there are no Tennessee cases precisely on point, but other jurisdictions have statutes with similar language, and the parties have appropriately relied on cases from other jurisdictions and cases involving for-profit corporations.[2]

While courts have addressed the question of proper purpose in cases involving a variety of situations, their opinions show a great deal of consistency in regard to general principles. In *Delaney v. Santa Fe Healthcare, Inc.*, 741 So.2d 595, 598 (Fl. App. 1999), a case involving a nonprofit corporation, the Florida court noted that "[a] proper purpose is one that is lawful in character and not contrary to the interest of the corporation." Such a purpose may be one which is "reasonably related to such person's interest as a member," and further, "[t]he fact that the request is being made by a stockholder or member who disagrees with the policies of the management of the corporation, or even has filed suit against the corporation, is not sufficient to defeat the request." *Id.* (citing *Oil Conservationists, Inc. v. Gilbert*, 471 So.2d 650, 653 (Fl. App. 1985)). *See also State ex rel Lowell Wiper Supply Co. v. Helen Shop, Inc.*, 362 S.W.2d 787, 792 (Tenn. 1962).

In *Lake v. Buckeye Steel Castings Co.*, 206 N.E. 2d 566, 569 (Ohio 1965), the court stated that in order for a shareholder to exercise the right of inspection of a corporation's records, "[n]othing more is required than that, acting in good faith for the protection of the interests of the corporation *and his own interests*, he desires to ascertain the condition of the corporation's business (emphasis in original). *See also Carlson v. Rabkin*, 789 N.E.2d 1122, 1129-30 (Ohio Ct. App. 2003). In *Davey v. Unitil Corp.,* 585 A.2d 858 (N.H. 1991) the court stated that "[a] proper purpose is generally defined as a purpose that is (1) related to a legitimate interest of a shareholder and (2) not harmful to the corporation or its shareholders." 585 A.2d at 860.[3]

---

[2] Much of the available case law involves for-profit corporations, and we note that Tenn. Code Ann. § 48-26-102 of the Tennessee Business Corporation Act describes the rights of shareholders of such corporations to inspect and copy the corporation's records in language that is virtually identical to the language in the Tennessee Nonprofit Corporation Act which sets out the rights of a nonprofit's members, including the requirement that a demand for accounting records be made in good faith and for a proper purpose. We therefore believe we can rely on such cases as persuasive authority where cases specifically involving nonprofit corporations are not available.

[3] Among the purposes that various courts have found to be proper were a member-reporter's intention to write a story about the management of a nonprofit utility (*Schein v. Northern Rio Arriba Electric Cooperative, Inc.,* 932 P.2d 490 (N.M. 1997)), the desire of a doctor-member of a nonprofit health care corporation to make sure that property conveyed to the corporation was used for the public purpose of furnishing health care to indigent patients (*Delaney v. Santa Fe Healthcare, Inc.*, *supra*), and the intention of a shareholder in a real estate corporation to monitor the financial
(continued...)

With regard to the shareholder-interest prong, in *Lowell Wiper Supply v. Helen Shop,* the court spoke of a stockholder's proper purpose as one that was "germane to his interest as a stockholder," 362 S.W.2d at 792. In other cases courts have spoken of requests that were "reasonably related to the legitimate interests of the shareholder," *Schein v. Northern Rio*, 932 P. 2d at 493-494, or "reasonably related to the person's interest as a shareholder," *North Oakland County Board of Realtors v. Realcomp, Inc.,* 572 N.W.2d 240, 242 (Mich. App. 1997); *Delaney v. Santa Fe Healthcare, Inc.*, 741 So.2d at 597.

In the present case, MTEMC does not dispute that the City sought its records for a purpose that was lawful in character. The City admits that it was acting for its own interests, but as the case law we have cited indicates, such a purpose is not in and of itself improper. The corporation argues, however, that the City is not entitled to its accounting records because its request was not related to the City's interests as a member of the corporation.

We note that both parties have acknowledged that the City of Franklin is a member of MTEMC only because its municipal facilities receive electricity from the corporation. Thus, for the purposes of this case there is no meaningful distinction between the City's interest in the corporation's records as a member and its interest as a customer.

As a purchaser and consumer of electric power, the City has a legitimate interest in how that power is delivered and at what cost. It has a legitimate interest in underground lines for bringing power to its own municipally-owned facilities; the fact that it also has an interest in providing electricity by that method to residents of the City does not reduce the legitimacy of its interest as a member of the nonprofit corporation. The City also has an interest, as a member and customer of MTEMC, in information useful in deciding whether it would be better served by purchasing its power needs from MTEMC or from itself if it were to acquire MTEMC's assets. The ability to decide to acquire certain assets from the utility is unique to entities like municipalities, and most members would not have that choice.[4]

Accordingly, we believe that the City's efforts to ascertain the value of the corporation's assets within its boundaries for the purpose of deciding whether to acquire those assets is in furtherance of its interests as a member.

MTEMC also argues that the City's purpose is improper because the acquisition of the corporation's assets by the City would be contrary to the corporation's interest. It did not offer any

---

[3](...continued)
health of the corporation and its compliance with bylaws (*North Oakland County Board of Realtors v. Realcomp, Inc.,* 572 N.W.2d 240 (Mich. App. 1997)).

[4]Since both MTEMC and the City are creations of the General Assembly, and since the powers and purposes of both entities are defined by statute, many of the principles applied in other cases to the interests of shareholders of for-profit corporations or to members of nonprofit corporations who are not municipalities do not directly address the interests in this case.

proof of this proposition at trial, but treated it as self-evident. On appeal, it argues that the City's actions would amount to a hostile takeover of MTEMC which would place the City in direct competition with the corporation. MTEMC's brief on appeal states, "[b]ecause MTEMC is currently the electric provider within the City of Franklin's municipal boundaries, it is axiomatic that a hostile acquisition of those assets would be inimical to the interests of MTEMC."

The corporation phrases the test as involving harm to the corporation's "interests" rather than harm to the corporation itself. As the cases described earlier demonstrate, a corporation cannot protect its records on the basis that the shareholder's purpose is contrary to the management's conception of the corporation's interests. Additionally, we have serious question about whether the for-profit concept of "competition" should be applied to activity by nonprofit entities.

In other words, while MTEMC's corporate purposes include the supplying of electrical power and energy services, nothing in its authorizing statutes or the nonprofit corporation statutes gives it any interest in being the entity to supply power to a particular area as opposed to a municipality. We do not believe that a nonprofit utility can decline to provide the requested information by arguing that the shareholder's request harms, interferes with, or is contrary to the corporation's "interest" in keeping all current members or customers. Such a nonprofit corporation has no legally protected interest in avoiding competition or loss of customers.

As a matter of public policy, we cannot conclude that a municipality's attempts to obtain information that would be helpful in deciding whether to acquire the utility's assets located within the municipality is inimical to any interest of the utility that the law would recognize or protect. The General Assembly has determined that municipalities should have the power to acquire such assets by the power of eminent domain. We must assume that the legislature considered it important that a municipality have the power needed to enable it to provide electricity to itself, its municipally-owned facilities, and its citizens. The public policy of this state is established by statute, and actions in furtherance of such policy will not ordinarily be held to be for an improper purpose.

In the case before us, the determinative question is whether the municipality member's purpose is harmful to the nonprofit utility corporation. The record does not contain any actual proof of harm to the nonprofit corporation. A sale of assets for a fair price, whether procured by mutual agreement or compelled by eminent domain, is not necessarily harmful to the corporation. While the loss of its customer base in Franklin will reduce the revenues of the company, that loss may be offset by reduced costs or liabilities. There is no proof that the corporation itself will be harmed in its ability to provide service to its other customers.

The corporation also suggested during oral argument that since its network, which includes transmission lines and substations within the City, does not begin or end at the City's borders, those assets cannot be severed from the network without damage to the corporation. The only proof at trial on this issue was in the deposition of Sheree Brown, who stated that there should be no "stranded costs" related to electrical generation. Furthermore, Ms. Brown testified that while the acquisition

of the city's assets could lead to "severance and reintegration costs," such costs can be avoided if both parties are amenable to sharing assets.[5]

The absence of proof regarding harm to MTEMC necessitates an examination of which party had the burden of proof.

## B. THE BURDEN OF PROOF

Each of the parties argued, both in the trial court and on appeal, that the other party should bear the burden of proof when the court is determining whether a particular purpose for inspecting the books and records of a nonprofit corporation is proper or not. Since the statute is silent as to the burden of proof, we must turn to case law for guidance. There has been extensive litigation dealing with general questions involving access to corporate records, and while there is a split of authority as to where the burden of proof lies, the majority view is that the burden is on the corporation to prove an improper purpose. 18A Am.Jur. 2d, *Corporations*, § 346.

Tennessee is apparently in accord with the majority view on this question, at least in regard to for-profit corporations. In *Hillhaven Corp. v. State ex rel Manor Care, Inc.,* 565 S.W.2d 210, 212 (Tenn. 1978), minority shareholders of a corporation "sought to inspect the books and records of the corporation and to obtain a list of shareholders," because they wanted to communicate to the

---

[5]MTEMC further argues in reliance on some cases which have held that a purpose is improper if it is solely in pursuit of social or political interests. The corporation contends that the desire to bury utility lines underground in the City of Franklin is just such a social or political interest. The corporation cites *Pillsbury v Honeywell, Inc.,* 191 N.W.2d 406 (Minn. 1971), and *McMahon v. Dispatch Printing,* 129 A. 425 (N.J. 1925), as examples of cases in which the courts held that the plaintiff shareholders were not entitled to inspect corporate documents because their requests were actuated by social or political concerns rather than to further the interests of the corporation or their own interests as shareholders.

Neither of these cases is analogous to the one before us. In *Pillsbury v. Honeywell*, the plaintiff was an opponent of the Vietnam war who bought a single share of Honeywell stock in order to be able to seek corporate documents that might enable him to persuade shareholders that Honeywell should not be involved in the business of manufacturing ammunition for the war. The Minnesota court held that this was not a proper purpose because it was not germane to his interest as a stockholder. *Pillsbury* at 410. The plaintiff in *McMahon v. Dispatch Printing*, 129 A. 425 (N.J. 1925), owned 30 shares of preferred stock in the defendant printing company. He was hostile to the president of the printing company, who was also the New Jersey Secretary of State. The plaintiff wished to discredit the president politically so he would not be able to retain his governmental post. The New Jersey court held that the plaintiff's purpose was not proper and did not entitle him to inspect the records of the corporation. *McMahon* at 426. In the present case, the City of Franklin wanted to place its electrical lines underground, but was unable to do so under the terms of its franchise with MTEMC. It sought the records of the corporation in order to help it determine whether it would be in the City's interest to purchase or acquire by eminent domain the assets of the corporation within its boundaries so it would be free to deliver electricity to its municipally-owned facilities and to its citizens in the manner it preferred. Such a purpose is very different from the purposes of the plaintiffs in *Pillsbury* and *McMahon*, which were extraneous to both the interests of those defendant corporations and to the interests of the plaintiffs as shareholders. We therefore find that the MTEMC's argument on this point to be without merit.

shareholders an offer to buy shares of the corporation.[6] The corporation refused, and the minority shareholders filed a petition for mandamus. The trial court granted the petition, and the Tennessee Supreme Court affirmed. The Court noted that very little factual proof was introduced by either party, although both had the right and the opportunity to offer such evidence. The court stated that it agreed with the trial court that the failure of proof was fatal to the corporation's case, because "it was incumbent upon appellant [the corporation], both by pleading and by proper proof, to establish an improper or illegal purpose, so as to justify its refusal to make available the books and records requested."

Cases from other jurisdictions in which the court specifically held that a for-profit corporation had to carry the burden of proving that a minority shareholder's request for records was improper include *Bennett v. Mack's Supermarkets Inc.*, 602 S.W.2d 143, 146 (Ky. 1979); *Crane Co. v. Anaconda Co.*, 346 N.E.2d 507, 511 (N.Y. 1976); *Carlson v. Rabkin*, 789 N.E.2d 1122, 1129-1130 (Ohio Ct. App. 2003) (citing *Lake v. Buckeye Steel Castings Co.*, 206 N.E. 2d 566 (Ohio 1965)); *Skoglund v. Ormand Industries, Inc.,* 372 A.2d 204, 209 (Del. Ch. 1976).

*Schein v. Northern Rio Arriba Electric Cooperative, Inc.*, 932 P. 2d 490 (N.M. 1997), is especially helpful for our analysis because the defendant in that case, like the defendant in the present case, was a nonprofit electrical cooperative. The plaintiff was a newspaper reporter and was also a member in good standing of the cooperative, since she purchased her electrical power from it. She sought certain financial records from the cooperative for a story she was working on, but her request was denied. She then filed a petition for writ of mandamus, which the trial court granted. The cooperative appealed.

The New Mexico Supreme Court affirmed. It noted that under the law of that state (as under Tennessee law) "shareholders have the right to inspect, at reasonable times and places, a corporations's books and records for proper purposes." It then cited a number of cases from other jurisdictions to the effect that "this right generally extends to members of non-stock, nonprofit corporations," *Schein*, 932 P.2d at 493, and concluded that "[c]onsistent with this policy of allowing generous access, the majority common-law rule, and the rule adopted by this Court, places the burden on the corporation to show improper purpose in denying shareholder access to corporate data." *Id*.

In light of our Supreme Court's approval of the majority view in regard to the burden of proof applicable to for-profit corporations and the holding of the courts of New Mexico and other jurisdictions that nonprofit corporations should also be required to prove improper purpose before they can deny member requests for corporate documents, we hold that it was MTEMC's burden in this case to prove that the City's purpose was improper. The corporation did not put on any proof

---

[6] At the time the *Hillhaven* case was decided, an earlier version of the business corporation act was in effect. Like its successor statute, Tenn. Code Ann. § 48-717 allowed shareholders to "compel the production for examination of the books, documents and records of the corporation 'upon proof of proper purpose'" *Hillhaven Corp. v. State ex rel Manor Care*, 565 S.W.2d at 211-212.

as to harm it might suffer from the City's acquisition of its assets, but only elicited testimony that the City of Franklin did not consider the impact of such an acquisition on the corporation.

The trial court granted dismissal of the City's complaint at the close of the City's proof. Consequently, MTEMC did not put on its proof. Accordingly, the case should be remanded to the trial court for further proceedings consistent with this opinion.

**IV.**

The order of the trial court is reversed. We remand this case to the Chancery Court of Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellee, the Middle Tennessee Electric Membership Corporation.

_____
PATRICIA J. COTTRELL, P.J., M.S.